PILOTS AGAINST ILLEGAL DUES (PAID), et al., Plaintiffs–Appellants,

v.

AIR LINE PILOTS ASSOCIATION (ALPA), Defendant–Appellee.

No. 89–1053.

United States Court of Appeals, Tenth Circuit.

July 11, 1991.

---

1124

P.C., Denver, Colo., with him on the brief), for defendant-appellee.

Before McKAY and ANDERSON, Circuit Judges, and BROWN, District Judge.[*]

WESLEY E. BROWN, District Judge.

Plaintiff-appellants are twenty-one non-union pilots employed by United Airlines. The defendant-appellee Air Line Pilots Association (ALPA) is the exclusive bargaining representative of all United pilots. In 1983, United Airlines and ALPA entered into an "agency shop" arrangement, under which United pilots were required either to become ALPA members or to pay ALPA an agency fee for expenses incurred in representing the pilots. Such arrangements are authorized by Section 2, Eleventh of the Railway Labor Act (RLA), 45 U.S.C. § 152.

The plaintiffs brought this action alleging that ALPA violated the RLA and plaintiffs' constitutional rights in 1983 and subsequent years by using agency shop fees for purposes not "germane to collective bargaining." Plaintiffs also alleged that ALPA was impermissibly charging them for expenses incurred in activities at other airlines. Furthermore, the plaintiffs sought relief for what they contended were inadequate procedures for challenging ALPA's determination of the agency fees owed by non-members. Judgment was entered for the defendants after a trial to the district court. The district court found that ALPA had rebated to the plaintiffs the portion of agency fees that were used for purposes not germane to collective bargaining. The district court also found that ALPA had established adequate procedures to allow challenges to agency fees. The court found the plaintiffs' claims concerning the rebate for 1983 to be barred by the applicable statute of limitations. Finally, the court dismissed plaintiffs' constitutional claims under 42 U.S.C. § 1983. Appellants contended in arguments before this

Franklin A. Nachman, Semple & Jackson, P.C., Denver, Colo. (Martin Semple and Dwight L. Pringle, of the same firm, with him on the brief), for plaintiffs-appellants.

Jerry D. Anker, Air Line Pilots Ass'n, Washington, D.C., (Felice Busto, ALPA, Washington, D.C., and Donald D'Antuono, Tallmadge, Tallmadge, Wallace & Hahn,

---

[*] The Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

court that the district court committed several errors. We held our opinion in this matter in abeyance pending the Supreme Court's decision in *Lehnert v. Ferris Faculty Association*, —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) because the *Lehnert* case raised several issues nearly identical to those raised by appellants.

### a. Union Expenditures Generally Under Section 2, Eleventh.

We first examine the federal law concerning the authority of a union to charge expenditures to dissenting employees under the Railway Labor Act. The agency shop[1] was first given a stamp of approval by Congress in 1951 when the RLA was amended to permit such arrangements. The 1951 amendment was an attempt to deal with "free riders"—employees who benefitted from a union's representation but did not contribute to the costs of that representation. The constitutionality of this amendment was upheld in *Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), in which the Supreme Court rejected the contention that the amendment's effect of forcing contributions from unwilling persons was a violation of the First Amendment or the Due Process Clause of the Fifth Amendment. The Court found it was within Congress' power to require financial support for a collective bargaining agent from those who benefitted from the work of the agent. *Hanson*, 351 U.S. 225, 238, 76 S.Ct. 714, 721. The Court observed that "[t]he financial support required relates ... to the work of the union in the realm of collective bargaining." *Id.* at 235, 76 S.Ct. at 719. The Court noted, however, that "[i]f 'assessments' are in fact imposed for purposes not germane to collective bargaining, a different problem would be presented." *Id.* In *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the Supreme Court held that the RLA did not authorize

a union to use agency fees from objecting employees to support political candidates. The Court stated that Congress did not intend to vest the unions with unlimited power to spend exacted money. Although the Court did not set forth a standard to distinguish between proper and improper uses of agency fees, it stated:

> Its use to support candidates for public office, and advance political programs, is not a use which helps defray the expenses of the negotiation or administration of collective agreements, or the expenses entailed in the adjustment of grievances and disputes. In other words, it is a use which falls clearly outside the reasons advanced by the unions and accepted by Congress why authority to make union-shop agreements was justified.

*Street*, 367 U.S. at 768, 81 S.Ct. at 1799. In *Railway Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), the Court again distinguished between political expenditures and those expenditures that were "germane to collective bargaining."

More recently, in *Ellis v. Railway Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), the Court addressed the issue of whether a union could charge objecting employees for expenses that fell in the grey area between expenses clearly germane to collective bargaining and expenditures that are clearly political. The Court stated that:

> [T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also

---

**1.** An "agency shop" agreement generally provides that while employees are not required to join the union, they are required to pay the union an amount equal to union dues. A "union shop" agreement provides that no one will be employed who does not join the union within

a short time after being hired. *See Oil Workers v. Mobil Oil Corporation*, 426 U.S. 407, 409 n. 1, 96 S.Ct. 2140, 2141 n. 1, 48 L.Ed.2d 736 (1976). As far as the issues raised in this case are concerned, there is no material difference between the two.

the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.

*Ellis,* 466 U.S. at 448, 104 S.Ct. at 1892.

In *Lehnert v. Ferris Faculty Association,* —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), a case dealing with a public sector union, the Court declared that in determining what expenses a union may constitutionally charge dissenting members, *Hanson* and *Street* and their progeny teach that chargeable activities must (1) be "germane" to collective bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding "free riders"; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. *Id.* at ——, 111 S.Ct. at 1951. These same characteristics presumably are required for chargeable expenses under the Railway Labor Act, since the Court has consistently interpreted the RLA to avoid serious doubt of the statute's constitutionality. *Street,* 367 U.S. at 749, 81 S.Ct. at 1789.

*b. Expenditures by ALPA.*

■ Appellants first contend that the district court applied an erroneous standard of law to determine which of ALPA's expenditures were germane to collective bargaining. Appellants believe that the district court gave the union's determination of what was germane and what was not germane "undue deference." We disagree. In findings made from the bench, the district court clearly cited the *Ellis* case and recognized that the governing standard was whether the union's expenditures were shown to be germane to collective bargaining. Tr. Vol. XIII at 13. The court recognized that the burden of proving that the expenditures were germane was on the defendant. *Id.* Appellant suggests that the court's remark at one point that "the court merely has to look at this to see whether the union used good judgment, ..." *Id.* at 15, shows that the court ap-

plied an erroneous standard of law. Perhaps this particular comment was intended to reflect that the nature of the free rider problem requires that the union "have a certain flexibility in its use of compelled funds." *Ellis,* 466 U.S. at 456, 104 S.Ct. at 1896. At any rate, the balance of the court's analysis shows that the court generally applied the proper standard and determined that the expenditures in question were germane to ALPA's duties as a collective bargaining agent.[2] We cannot agree that the district court gave undue deference to ALPA's determination of what was germane and what was not germane.

In addition to challenging the standard applied by the district court, appellants challenge the court's findings that the various expenses incurred by the union were germane to collective bargaining. In particular, appellants object to the court's finding that ALPA could properly charge agency fee payers at United for expenses incurred by ALPA in representing other airlines. In calculating the amount of agency fee that each of the plaintiffs owed, ALPA did not attempt to determine what expenses it incurred on behalf of each airline. Instead, ALPA calculated the total amount of its chargeable expenses at all airlines and then divided that amount by the total number of employees at all of the airlines. Thus, the agency fee was determined by combining and averaging expenses from all bargaining units rather than by charging employees in each specific bargaining unit only for expenses incurred representing that unit. Appellants argue that the Supreme Court's decision in *Ellis* made clear that expenses incurred by a union outside of a particular bargaining unit are not considered germane to collective bargaining as far as the employees in that unit are concerned.

Whatever ambiguity *Ellis* created with regard to expenses incurred by a union outside of a particular bargaining unit was cleared up by the Court in *Lehnert.* Like the plaintiffs here, the plaintiffs in *Lehnert* objected to helping pay for union expendi-

---

**2.** As set forth on Pp. 1128–30, infra, we find that the court erroneously determined that all

litigation expenses could be charged to the plaintiffs.

tures outside of their bargaining unit because those expenses did not produce a direct benefit to them. The *Lehnert* Court concluded that "a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees bargaining unit." *Lehnert,* —— U.S. at ——, 111 S.Ct. at 1952. The Court declared that it had never interpreted the test for germane expenses to require a direct relationship between the expense at issue and some tangible benefit to the dissenter's bargaining unit and that to do so would "ignore the unified-membership structure under which so many unions ... operate." *Id.* The Court cautioned that this did not give a local union carte blanche to charge dissenters for activities wholly unrelated to the employees in their unit, such as a contribution in the nature of a charitable donation from a local union to its parent. The only connection required is that "there must be some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Id.* at ——, 111 S.Ct. at 1952. This is so because "[t]he essence of the affiliation relationship is the notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them. Consequently, that part of a local's affiliation fee which contributes to the pool of resources potentially available to the local is assessed for the bargaining unit's protection, even if it is not actually expended on that unit in any particular membership year." *Id.* at ——, 111 S.Ct. at 1953.

 When these standards are applied to the facts of this case, it is clear to us that ALPA properly charged the plaintiffs for negotiating and administrative expenses incurred outside of the United bar-

gaining unit. The district court found that it was reasonable for ALPA to divide its negotiation costs among all of the employees it represents because of the effect negotiations at one airline have upon others. The court found persuasive the argument that when certain terms are negotiated at one airline they very quickly become incorporated into agreements with other airlines. Although the plaintiffs vigorously contested this assertion, the court was persuaded otherwise.[3] This factual finding has considerable support in the record and we cannot say that it is clearly erroneous. ALPA's method of pooling negotiation expenses is permissible under *Lehnert* because "the payment is for services that may ultimately enure to the members of the local union by virtue of their membership in the parent organization." *Lehnert,* —— U.S. at ——, 111 S.Ct. at 1952. Although negotiations at other airlines are not undertaken directly on behalf of the plaintiffs, the costs of such activities can be said to contribute to "the pool of resources potentially available" to the United unit. *Cf. id.* at ——, 111 S.Ct. at 1961. The evidence here suggests that a contract negotiated on behalf of one ALPA unit is subsequently used as a bargaining tool for another unit. In light of this relationship, it is not unreasonable to determine the plaintiffs' agency fee by pooling the negotiating expenses of these units and dividing the costs among the represented employees. This method does not run afoul of *Ellis,* which states that objecting employees "may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit." *Ellis,* 466 U.S. at 448, 104 S.Ct. at 1892. Similarly, the union may spread its administrative costs to all of the bar-

---

**3.** The district court cited with approval *Crawford v. Airline Pilots Assoc. Int'l.,* No. 87–891–A (E.D.Va.1988), *aff'd,* 870 F.2d 155 (4th Cir.1989), *reh'g en banc granted,* a similar case in which

the district court found that the circumstances of negotiating collective bargaining contracts for pilots made it reasonable for ALPA to divide its costs equally among all of its constituents.

gaining units, including that of the plaintiffs. Administrative costs by their nature contribute to the pool of resources potentially available to each affiliated bargaining unit. These expenses are necessary to maintain the union's existence and ultimately enure to the benefit of all represented employees. *Cf. Ellis*, 466 U.S. at 448, 104 S.Ct. at 1892 ("Surely if a union is to perform its statutory functions, it must maintain its corporate or associational existence....").

 Although *Lehnert* and *Ellis* pose no obstacle to spreading the costs of administration and negotiation among various bargaining units, some of the litigation expenses incurred by ALPA may not be charged to objecting United pilots. ALPA spent large sums of money for litigation after Continental Airlines filed for bankruptcy in 1983. ALPA challenged Continental when the airline declared that its bankruptcy filing abrogated its collective bargaining agreement. The plaintiffs object to paying any of the costs of the Continental litigation because it did not involve the United Airlines bargaining unit. In *Ellis*, the Supreme Court had this to say about the propriety of charging objecting employees for litigation expenses:

> The expenses of litigation incident to negotiating and administering the contract or to settling grievances and disputes *arising in the bargaining unit* are clearly chargeable to petitioners as a normal incident of the duties of the exclusive representative. The same is true of fair representation litigation *arising within the unit*, of jurisdictional disputes with other unions, and of any other litigation before agencies or in the courts *that concerns bargaining unit employees* and is normally conducted by the exclusive representative. The expenses of litigation not having such a connection *with the bargaining unit* are not to be charged to objecting employees. Contrary to the view of the Court of Appeals, therefore, *unless the Western Airlines bargaining unit is directly concerned, objecting employees need not share the costs of the union's challenge to the legality of the airline industry mutual aid pact; of litigation seeking to protect the rights of airline employees generally during bankruptcy proceedings; or of defending suits alleging violation of the nondiscrimination requirements of Title VII of the Civil Rights Act of 1964.*

*Ellis*, 466 U.S. at 453, 104 S.Ct. at 1895 (emphasis added). Under this standard, ALPA may not charge objecting United pilots for expenses incurred in litigation on behalf of the Continental bargaining unit. The plaintiffs here were not directly concerned by the bankruptcy litigation at Continental. The district court found that the litigation was a "very important part of keeping this union strong." Tr. Vol. XIII at 15. ALPA failed to show, however, that this litigation benefitted the United bargaining unit in any significant way. No concrete evidence was presented as to how the bankruptcy litigation concerned United employees. The suggestion that challenging one airline might prevent other airlines from declaring bankruptcy amounts to little more than a hypothesis. The argument that the litigation helped to "make the union stronger" is too nebulous to support charging the plaintiffs for those expenses. This argument is analogous to the situation in *Ellis*, where the union contended that organizing expenses could be properly charged to objecting nonmembers because organizing efforts helped to strengthen the union's overall bargaining position. The *Ellis* Court observed that § 2, Eleventh of the Railway Labor Act was not intended to be a tool for the expansion of overall union power. *Id.* at 451, 104 S.Ct. at 1893. Moreover, the Court found that the free-rider rationale was not aimed at such expenses:

> If one accepts that what is good for the union is good for the employees, a proposition petitioners would strenuously deny, then it may be that employees will ultimately ride for free on the union's organizing efforts outside the bargaining unit. But the free rider Congress had in mind was the employee the union was required to represent and from whom it could not withhold benefits obtained for

its members. Nonbargaining unit organizing is not directed at that employee. *Id.* at 452, 104 S.Ct. at 1894. Because ALPA has failed to show that the litigation involving Continental was related to the plaintiffs' bargaining unit, the free-rider rationale does not mandate that plaintiffs share in the costs associated with it.

■ ALPA argues that *Ellis* was not intended to express any opinion on how a union should allocate litigation expenses among its various bargaining units. Appellee points out that other courts have read *Ellis* in a restrictive manner. *See Crawford v. Airline Pilots Association International,* 870 F.2d 155 (4th Cir.1989), *reh'g en banc granted.* At bottom, appellee's argument boils down to a contention that the Supreme Court did not mean what it said in *Ellis.* We think the Court meant what it said. The Court must be presumed to know the meaning of the term "bargaining unit." The *Ellis* case makes no exception for litigation that helps the union in a general way or that benefits other bargaining units represented by the union. In order for litigation expenses to be charged to a bargaining unit, the litigation must concern the members of the bargaining unit. "The expenses of litigation not having such a connection with the bargaining unit are not to be charged to objecting employees." *Ellis,* 466 U.S. at 453, 104 S.Ct. at 1895.

■ This reading of *Ellis* is bolstered by the recent *Lehnert* decision. In an opinion representing the view of four justices, Justice Blackmun concluded in *Lehnert* that although a union could generally charge dissenters for expenses incurred on behalf of other bargaining units,

"[t]his rationale does not extend ... to the expenses of litigation that does not concern the dissenting employees' bargaining unit.... While respondents are

clearly correct that precedent established through litigation on behalf of one unit may ultimately be of some use to another unit, we find extra-unit litigation to be more akin to lobbying in both kind and effect. We have long recognized the important political and expressive nature of litigation. [cite omitted] Moreover, union litigation may cover a diverse range of areas from bankruptcy proceedings to employment discrimination." See *Ellis,* 466 U.S. at 453 [104 S.Ct. at 1895]. When unrelated to an objecting employee's unit, such activities are not germane to the union's duties as exclusive bargaining representative. Just as the Court in *Ellis* determined that the RLA, as informed by the First Amendment, prohibits the use of dissenters' fees for extra-unit litigation, *ibid.,* we hold that the Amendment proscribes such assessments in the public sector.

*Lehnert,* —— U.S. at ——, 111 S.Ct. at 1963–1964. In view of the fact that this section of Justice Blackmun's opinion was not adopted by a majority of the Court, some uncertainty may remain as to whether the Constitution forbids charging dissenting employees for extra-unit litigation.[4] The Railway Labor Act, however, is consistently construed in order to relieve doubts concerning the statute's constitutionality. *See Id.* at ——, 111 S.Ct. at 1978 (Scalia, J. dissenting in part) ("*Street* adopted a construction of the Railway Labor Act nowhere suggested in its language, to avoid 'serious doubt of [its] constitutionality.' ") In light of the interpretation of the RLA stated in *Ellis* and the further constitutional problems suggested in *Lehnert,* we conclude that the RLA does not allow ALPA to charge the plaintiffs for the litigation expenses objected to that arise outside of the plaintiffs' bargaining unit. Such a construction is consistent with Congress' intent in amending the RLA to elimi-

---

**4.** The portion of Justice Blackmun's opinion dealing with extra-unit litigation expenses was joined by Chief Justice Rehnquist and Justices White and Stevens. Additionally, three other justices would have adopted a test for chargeable expenses that required "a direct relationship between the expense at issue and some tangible benefit to the dissenters' bargaining unit." *Id.* —— U.S. at ——, 111 S.Ct. at 1960 (Scalia, J., concurring in part and dissenting in part). As we noted *supra* at p. 1129, ALPA failed to show such a relationship with regard to its litigation expenses outside of the United bargaining unit. Thus, it appears that a majority of the Supreme Court would not allow ALPA to charge these litigation expenses to the plaintiffs.

nate the problem of the free rider while at the same time protecting freedom of dissent. *See Street*, 367 U.S. at 767, 81 S.Ct. at 1799. As Justice Blackmun recognized, an association for litigation often constitutes the most effective form of political association. *Lehnert*, —— U.S. at ——, 111 S.Ct. at 1963 (citing *NAACP v. Button*, 371 U.S. 415, 431, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)).

On remand the district court should direct the union to redetermine the amount of the agency fee owed by the plaintiffs for the period covered by this suit. The union must exclude from chargeable expenses any litigation expenses that did not concern the United bargaining unit. Expenses relating to the bankruptcy of Continental Airlines must be excluded, as well as any litigation expenses arising from the bankruptcy of any employer other than United. The costs of any litigation associated with the Continental matter, such as the RICO suit against ALPA, should also be excluded because ALPA has failed to show the requisite connection with the United bargaining unit. Under *Ellis*, the expenses of any other litigation that does not directly concern the United Airlines bargaining unit must also be excluded.

■ Appellants' next objection relates to the Major Contingency Fund. This large reserve fund was financed by a one percent dues increase imposed on all pilots represented by ALPA. ALPA decided to establish the fund because it believed that its vulnerability to a prolonged strike significantly weakened its bargaining position with management. Appellants take issue with two features of the Major Contingency Fund. First, they object to ALPA's practice of accumulating agency fees in a "war chest." The district court's findings show, however, that the contingency fund had a direct impact on the union's ability to negotiate a collective bargaining agreement. Based on the court's findings, we agree that the contingency fund is sufficiently germane to collective bargaining that it is fair to require the plaintiffs to bear a portion of the costs of funding it. The fund is available to United pilots in the event of a strike against United. This directly enhances the ability of ALPA to negotiate on the plaintiffs' behalf. The contingency fund was shown to be reasonably employed to effectuate the duties of ALPA in representing the plaintiffs. *Cf. Ellis*, 466 U.S. at 448, 104 S.Ct. at 1892.

■ Plaintiffs' second objection concerning the fund is that it was used for an impermissible purpose because payments were made to flight attendants and others who honored ALPA's strike against United Airlines. Whatever the plaintiffs' beliefs may be regarding the propriety of a strike against their employer, however, the simple fact is that a strike is a conventional practice in the realm of collective bargaining. We cannot say the court erred in determining that such payments were reasonably employed by the union to effectuate its duties as the exclusive representative of the bargaining unit.

■ In addition to the requirement that expenses be "germane to collective bargaining" in order to be chargeable, *Lehnert*, also indicated that such expenses must be justified by the government's interest in labor peace and avoiding "free riders," and they must not add to the burdening of free speech inherent in the allowance of the agency shop. Because *Lehnert* was not decided until after the appeal was taken in this case, the district court did not have the benefit of that opinion in making its findings. Inasmuch as the record before us is sufficiently complete and the facts underlying the plaintiffs' claim are undisputed, we have examined the union expenses found to be germane in light of the additional requirements of *Lehnert*. We find that the expenses at issue here are in fact justified by the government's interest in eliminating the free rider problem. ALPA's negotiation and administrative expenses (as well as those other expenses taken to effectuate its duties as the exclusive bargaining representative) presumably created a benefit to all those represented by ALPA; it is therefore fair to require the plaintiffs to share in those costs. Moreover, these expenses create little additional interference with the First Amendment in-

terests of the plaintiffs beyond that already countenanced by allowing the agency shop arrangement. By an overwhelming margin, the expenses relate to the union's duties of negotiation and administration of collective bargaining contracts rather than to expressive and ideological activities. Clearly, compulsory financial support of a union does not, without more, violate the First Amendment. *Lehnert,* —— U.S. at ——, 111 S.Ct. at 1951. We find no statutory or constitutional barriers to charging the plaintiffs for those expenses shown to be germane to collective bargaining.

#### c. *Procedures.*

Appellants next contend that the procedures adopted by ALPA regulating challenges to the agency fee determination were constitutionally inadequate. In *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), the Supreme Court held that the Constitution required certain procedural safeguards in connection with an agency shop arrangement between a teachers' union and a school board. The constitutional requirements set forth by the Court included an adequate explanation of the basis for the agency fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending. *Hudson,* 475 U.S. at 310, 106 S.Ct. at 1077. In the instant case, the district court found that the procedures established by ALPA met the requirements set forth by the Supreme Court in *Hudson.*

A threshold issue in this case is whether the *Hudson* procedures apply to an agency shop agreement between private parties. Both the *Hudson* case and its predecessor, *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), found that procedural safeguards were required in an agency shop arrangement involving a public employer. The Supreme Court has not expressly stated whether the same procedures would be re-

quired under an agency shop arrangement with a private employer. We find that it is not necessary to resolve the issue in this case because, although we assume *Hudson* does apply, appellants have not shown they are entitled to any relief beyond that required by the RLA.

■ There appears to be no challenge to the rebate procedures currently in place at ALPA. Instead, appellants focus on ALPA's procedures in past years. Appellants raise three principal objections concerning past procedures. First, they argue that the rebate reports were not specific enough to allow objections to the calculation of the agency fee. We agree with the district court, however, that the reports met the minimum level of specificity required by *Hudson.* The Court noted in *Hudson* that a union "need not provide nonmembers with an exhaustive and detailed list of all of its expenditures," but that adequate disclosure "surely would include the major categories of expenses." *Hudson,* 475 U.S. at 307, n. 18, 106 S.Ct. at 1076, n. 18. Although ALPA's initial rebate reports were somewhat sketchy, they outlined the major categories of expenses and gave potential objectors sufficient information to gauge the propriety of the union's fee.

■ Appellants' second objection relates to the lack of an arbitration procedure in connection with the 1984 rebate. The rebate report for 1984 was not issued until shortly after the *Hudson* case was decided in 1986. As the *Hudson* Court made clear, the opportunity for prompt review by an impartial decisionmaker is a requirement in an agency shop arrangement.[5] Although the union here did not have adequate procedures relating to the 1984 rebate, we do not think *Hudson* would require the relief requested by appellants. Appellants suggested that the district court order the union to refund all agency fees paid for 1984. In assessing what remedy was appropriate for the union's inadequate procedures, however, the district court first observed that plaintiffs did not request arbi-

---

5. As noted on page 1132, supra, we assume for purposes of this opinion that the *Hudson* re-

quirements would apply to the agency shop provision at United.

tration for 1984 or even when the procedure was available in connection with the 1985 rebate. The court felt that the union's failure to provide arbitration normally would require the court to order the issues to be submitted to arbitration, but found that this would be superfluous under the present circumstances because the issues had already been presented to and ruled on by the court. Although the procedure for challenging the 1984 rebate clearly did not measure up to *Hudson,* under the circumstances the district court chose a permissible course. The *Hudson* procedural scheme evidently contemplates that challenges to agency fee determinations will be reviewed initially through an arbitration procedure. *Hudson,* 475 U.S. at 307 and n. 20, 106 S.Ct. at 1076 and n. 20. It would be redundant at this point, though, to order the matter to be submitted to an arbitrator. *Cf. Hudson v. Chicago Teachers Union,* 922 F.2d 1306 (7th Cir.1991) ("Were we to ... provide a hearing and judicial determination of the correctness of the fee, we would in effect render redundant and irrelevant the requirement that an impartial decisionmaker hear the dispute...."). Under the circumstances of this case, including the fact that appellants did not request arbitration, the hearing before the district court was adequate to protect the rights of the plaintiffs. *Cf. Gilpin v. American Federation of State, County, and Municipal Employees,* 875 F.2d 1310, 1313–15 (7th Cir.1989) (Plaintiffs must show some harm to recover for inadequate union procedures). To the extent plaintiffs seek a return of agency fees plus interest that were used for purposes not germane to collective bargaining (e.g. for litigation expenses on behalf of Continental employees), that harm will be remedied under the RLA by the recalculation of agency fees by the union when the case is remanded.

Appellants final objection to ALPA's rebate procedures concerns the practice of placing disputed agency fees in an interest bearing escrow account pending determination of the appropriateness of the fee. We find that the district court did not err in determining that the escrow procedure now used by ALPA is adequate under *Hudson.*

The procedure ensures that agency fees will not be used even temporarily for improper purposes. *Cf. Hudson,* 475 U.S. at 305, 106 S.Ct. at 1075.

### d. Admission of Evidence.

■ Appellants contend that the district court abused its discretion by excluding certain evidence. The evidence in question indicated that ALPA officials may have believed that some of the plaintiffs were not obligated to pay agency fees. The district court excluded this evidence on the ground that it sought to inject new issues into the trial in an untimely fashion. Up until shortly before the trial began, plaintiffs' contentions focused primarily on whether the union's expenditures were germane to collective bargaining. A challenge to the obligation of the plaintiffs to pay any agency fees obviously would have changed the issues in dispute quite significantly. The defendant indicated that the inclusion of these issues would require it to call additional witnesses to testify. There is no indication that these issues were included in the pretrial order, although plaintiffs apparently had some awareness of the underlying facts during discovery. The plaintiffs did not seek a continuance or leave to amend the pleadings to allow the inclusion of these issues in the trial. Under the circumstances, the district court's exclusion of this evidence was not an abuse of discretion.

### e. Plaintiffs' Section 1983 Claims.

Appellant argues that the district court erred by dismissing their claims brought under 42 U.S.C. § 1983. The basis for the court's decision is not made clear from the record. Nevertheless, we affirm the dismissal because § 1983 applies only to actions taken under color of state law. The authorization for the agency shop at issue here was based on a federal statute, the Railway Labor Act, and § 1983 is therefore inapplicable.

### f. Denial of Class Certification.

■ Appellants next argue that the trial court's refusal to certify this matter as a class action or to allow additional plaintiffs

was reversible error. The district court evidently denied class certification on the ground that the plaintiffs would not adequately represent the class. *See* Fed.R. Civ.P. 23(a)(4). Appellants do not allege that the district court applied an improper standard in denying certification; we therefore review the court's decision only for an abuse of discretion. *Adamson v. Bowen,* 855 F.2d 668, 675 (10th Cir.1988). The district court concluded that the plaintiffs were inadequate representatives because one of the plaintiffs sent out a misleading letter to potential class members. Based on this episode, the court surmised that a conflict of interest existed among potential class members.

The district court clearly had a basis for finding that a potential conflict of interest existed among the class. The burden of showing the adequacy of representation was on the plaintiffs below and appellants have not demonstrated to us that they met this burden. We therefore reject the argument that the district court abused its discretion. *See Gilpin v. American Federation of State, County, and Municipal Employees,* 875 F.2d 1310, 1313 (7th Cir. 1989). Similarly, appellants have not demonstrated an abuse of discretion in the court's refusal to allow additional plaintiffs to be added to the suit. The court denied the motion to add additional plaintiffs after securing a stipulation from the union that it would treat other objecting nonmembers in the same fashion as the named plaintiffs. Tr. Vol. III at 23.

*g. Statute of Limitations.*

 Finally, appellants contend the district court erred in ruling that their claims arising out of agency fees collected in 1983 were barred by the statute of limitations. The district court applied what it found to be the most analogous statute of limitations under the circumstances—the six month period governing duty of fair representation claims—and held that any challenge concerning the 1983 rebate was barred. Appellants do not quarrel with the selection of this particular statute of limitations; instead they contend that the time for filing suit should have been tolled be-

cause ALPA did not notify them until 1986 that they could challenge the amount of the agency fee. We reject this argument. The rebate report in question was issued to the plaintiffs in November of 1984. As of that date the plaintiffs were in possession of the facts underlying a possible claim against the union. Consequently, any claim arising out of the 1983 rebate is barred because the plaintiffs' claim was not brought within six months of receiving the report. *See Crawford v. Air Line Pilots Association International,* 870 F.2d 155, 159 (4th Cir. 1989), *reh'g en banc granted,* (The statute of limitations began to run on the date the rebate report was distributed).

### Conclusion

The district court is reversed insofar as the court allowed the union to charge the plaintiffs for litigation expenses that did not directly concern the United bargaining unit. The matter is remanded to the district court for further proceedings not inconsistent with this opinion. The district court is affirmed in all other respects.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.