Robert MURRAY, Plaintiff,

v.

LOCAL 2620, DISTRICT COUNCIL 57, AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO, et al., Defendants.

No. C-99-3668 MHP.

United States District Court, N.D. California.

April 17, 2000.

A. Roger Jeanson, Kauff McClain & McGuire LLP, San Francisco, CA, Dylan B. Carp, c/o National Right to Work Legal, Defense Foundation, Inc., Springfield, VA, for Robert Murray.

Joseph R. Colton, Beeson Tayer & Bodine, San Francisco, CA, Robert D. Lenhard, Associate General Counsel, AFSCME, Washington, DC, for Local 2620 of District Council 57 of the American Federation of State, County, and Municipal Employees, AFL–CIO.

Tom Blake, CA State Attorney General's Office, San Francisco, CA, for Kathleen Connell.

### MEMORANDUM AND ORDER

PATEL, Chief Judge.

Robert Murray filed a class action complaint on July 30, 1999 against Local 2620 and other defendants alleging violations of his constitutional rights. Murray alleges that Local 2620 has not complied with the requirements for collection of fees from workers who are not members of the union but are benefitted by the union's collective bargaining agreements. Under 28 U.S.C. § 1983, plaintiff alleges violations of his First and Fourteenth Amendment rights pursuant to the Supreme Court's decision in *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Plaintiff now moves for certification of a Federal Rule of Civil Procedure 23(b)(1) or 23(b)(2) class of all individuals who, at any time since July 1, 1998, were state employees in State Bargaining Unit 19 [1], were not union members, and who had "fair share fees" taken from their pay.[2] Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

## BACKGROUND

### I. *Facts*

Murray works for the State of California as a Health and Social Service Professional. Local 2620 is the monopoly bargaining agent for the employees in Bargaining Unit 19. In 1998, Local 2620 secured a contract which included a provision that employees who were not members of the union would pay agency fees to cover services provided by the union. The union began collecting these "fair share fees" from non-members in July 1998. The same month, Murray wrote to the union requesting a refund of that portion of the fair-share dues that the union planned to use for purposes other than those directly related to collective bargaining, contract administration, or grievance procedures for the duration of the current contract. In September 1998, the union replied that Murray would receive a refund within sixty days. This did not occur. A year later, in August 1999, Local 2620 ordered the State of California to cease collecting the agency fees. In November 1999, the union sent out a notice to all non-members about the fair-share fees. The union had calculated that sixteen percent of its funds were spent for political, ideological or other activities not related to collective bargaining. The union offered to refund non-members fifty percent of the agency fees they had paid during the time from July 1998 to January 15, 2000. In response, 113 fee payers objected to paying full dues or challenged the calculations. Murray objected for the second time in a letter to the union dated

---

1. Local 2620 is the union that represents Bargaining Unit 19, which is made up of Health and Social Service Professional employees for the State of California.

2. Plaintiff's class definition in the first amended complaint does not match that in the motion for class certification. The court has taken the definition from the motion for class certification because this is the most recent document submitted to the court.

November 22, 1999. Murray later received a rebate at the fifty percent rate for the agency fees that had been collected from him.

## II. *Proposed Class*

Murray now moves for certification of a class under Federal Rule of Civil Procedure 23. The proposed class consists of all individuals who, at any time since July 1, 1998, were state employees in State Bargaining Unit 19, were not union members, and had "fair share fees" taken from their pay. Murray has not filed for certification of any subclasses.

## *LEGAL STANDARD*

All motions for class certification must meet the prerequisites of Federal Rule of Civil Procedure 23(a), which provides that a class action may be maintained if; (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. To obtain certification, a plaintiff must also fulfill the requirements for at least one of the three types of class actions enumerated in Rule 23(b).

 The burden of satisfying the Rule 23 requirements is on the party seeking certification. *See Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir.1977). However, a plaintiff need not make a prima facie showing that he will prevail on the merits for class certification to be granted. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("nothing in either the language or the history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Kraszewski v. State Farm Gen. Ins. Co.*, 38 Fair Empl. Prac. Cas. (BNA) 197, 209 (N.D.Cal.1985). The court is bound to take the substantive allegations in the complaint as true. *See Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975).

Rule 23's requirements "must be read liberally in the context of civil rights suits." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir.1975). Where a plaintiff seeks certification of subclasses, each subclass must meet the conditions of Rule 23. *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir.1981).

## *DISCUSSION*

### I. *Rule 23(a) Factors*

Rule 23(a) lists four factors which must be met for the maintenance of a class action. Each factor is discussed in turn.

### A. *Numerosity*

 The Rule 23(a)(1) numerosity factor does not mean that the class must be so numerous that joinder is impossible, but rather simply that joinder of the class is impracticable. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.1964). Plaintiff "need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." *Martinez v. Bechtel Corp.*, 10 Empl. Prac. Dec. (CCH) 6351, 6353 (N.D.Cal.1975). Defendants have conceded that plaintiff satisfies the numerosity requirement of Rule 23(a) because the proposed class consists of more than one-thousand people. The class is thus sufficiently numerous to make joinder of all members impracticable.

### B. *Commonality*

In order to fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole. Rule 23(a)(2) does not mandate that each member of the class be identically situated but only that there be substantial questions of law or fact common to all. *See Harris*, 329 F.2d at 914.

 Plaintiff cites several cases in which courts certified classes similar to the one proposed in this case: a group of employees did not belong to the union, had agency fees deducted, and challenged the union's practice

under *Hudson*.[3] *See, e.g., Mitchell v. Los Angeles Unified School Dist.,* 744 F.Supp. 938 (C.D.Ca.1990) (certifying class of non-union employees who had fees deducted and who alleged *Hudson* constitutional violations for judgment on relief issues), *rev'd on other grounds,* 963 F.2d 258 (9th Cir.1992); *Hohe v. Casey,* 128 F.R.D. 68 (M.D.Pa.1989) (certifying class of nonunion employees subject to wage deduction, whether or not they objected to the deductions, and who alleged *Hudson* constitutional violations); *George v. Baltimore City Public Schools,* 117 F.R.D. 368 (D.Md.1987) (certifying class of nonunion employees who had fees deducted and who alleged *Hudson* constitutional violations); *Damiano v. Matish,* 644 F.Supp. 1058 (W.D.Mich.1986) (certifying class of nonunion workers subject to agency fees or termination and who alleged *Hudson* constitutional violations), *rev'd on other grounds,* 830 F.2d 1363 (6th Cir.1987). In this case, there are common questions of law and fact as to the proposed class. Each member of the proposed class received no *Hudson* notice, and then received the late notice in November 1999. Each was subject to the defendants' allegedly unconstitutional action. Each is subject to the union's ongoing practices, which have not been shown to comply with *Hudson*.[4] These common issues are sufficient to meet Rule 23(a)'s commonality requirement.

Defendants argue that this case is distinguishable from the cases cited above because, here, defendants have conceded the constitutional violations and plaintiff's only remaining interest is in monetary damages. Defendants urge that the principal issue in this case is what damages, if any, are owed by the union. This characterization is flawed in several respects. Plaintiff argues that defendants have not cured the constitutional viola-

tions simply by admitting them and sending out a remedial notice. Plaintiff further contends that the November 1999 notice did not meet the requirements of *Hudson* and that the constitutional violations continue. Even if defendants could show that they have cured the violations, this would not render their past violations moot. In *Knight,* the defendant had refunded the entire agency fee to all non-members, not just those who objected, and had implemented procedures that met the requirements of *Hudson. See Knight v. Kenai Peninsula Borough School Dist.,* 131 F.3d 807, 812 (9th Cir.1997). The Ninth Circuit held that the issues of nominal damages, attorneys' fees and declaratory relief were still to be determined and remanded the case. *See id.* Thus, even returning all monies received and implementing constitutional procedures did not moot the past violation. Defendants have not demonstrated that they are currently complying with the *Hudson* requirements and they have returned only a portion of the fees to the people who objected. Clearly, there are several remaining issues which are no more moot in this case than they were in *Knight.* Contrary to defendants' contention, this action does not revolve solely around damages, but also involves significant constitutional issues and possible declaratory and injunctive relief.

Defendants further argue that the class fails the commonality requirement because there is a conflict within the class over damages, based on three groups that defendants delineate.[5] The first group alleged by defendants is the class of fee payers who later chose to join the union and whose interest now coincides with that of the union and not of the agency fee payers. A second group is the class of people who objected when the notice was sent in November 1999 and have

---

**3.** *Hudson* requires that a union collecting agency fees "include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Hudson,* 106 S.Ct. at 1078.

**4.** Defendants' memorandum seems to imply that the November 1999 notice was a *Hudson* notice. There is insufficient information at this time for the court to determine whether or not defendants

have complied with *Hudson.* Further, the notice appears to be a one-time remedial notice for past violations. Defendants have submitted no documentation of ongoing compliance with *Hudson.*

**5.** Defendants' argument relates to the commonality, typicality, and adequacy of representation requirements of Rule 23(a). This argument will be primarily addressed under the section regarding the commonality requirement.

since received an enhanced refund. The last group is the class of people who did not object after receiving the November 1999 notice. Defendants allege that this final group, which constitutes approximately ninety percent of the proposed class, has suffered no economic harm because its members would not have objected to the payment even if they had received proper notice. Defendants argue that these three groups have different interests than the plaintiff in collecting damages and thus cannot be certified as one class.

■ This argument is not persuasive except as to those persons who later joined the union.[6] First, it fails for the same reason that the previous argument did: this case is not solely about damages. Defendants' groups are based on the monetary damages that defendants claim each group has suffered. However, all groups have been subjected to common violations of their rights under *Hudson,* and all will benefit from the union's compliance with *Hudson.* Further, no inference can properly be drawn from the failure to object by the majority of the class. The court cannot conclude at this stage of the proceeding that the November 1999 notice was a proper *Hudson* notice. If the notice was not sufficient, it would be inappropriate to draw any conclusions from the lack of an affirmative objection. *See Lowary v. Lexington Local Board of Educ.,* 903 F.2d 422, 430 (6th Cir.1990) (holding that where notice procedures and fee information were inadequate, the court will not find waiver of rights based on failure to object to defective notice). Even if the November 1999 notice did comply with *Hudson,* defendants have cited no cases in which courts have denied class certification based on the proposed distinction between those who objected and those who did not.

Defendants cite cases from other circuits in support of their contention that there is a conflict of interest between the groups and thus certification of a single class is not proper. In *Gilpin v. American Fed. of State, County, and Mun. Employees,* 875 F.2d

1310, 1313 (7th Cir.1989), the appellate court drew a distinction between people who objected to paying the full dues based on ideological concerns and those who objected simply because they wanted to pay as little as possible. Three other courts have cited *Gilpin* while upholding a denial of class certification. *See Kidwell v. Transp. Communications Int'l. Union,* 946 F.2d 283, 305 (4th Cir.1991); *Weaver v. The University of Cincinnati,* 970 F.2d 1523, 1530–31 (6th Cir. 1992); *Pilots Against Illegal Dues v. Air Line Pilots Assoc.,* 938 F.2d 1123, 1134 (10th Cir.1991), *rev'd in part on other grounds,* 938 F.2d 1123 (10th Cir.1991). This line of cases is not persuasive for two reasons. First, the factual scenarios in all four cases differ substantially from this case and many cases in which similar classes were certified. *Gilpin* involved the retroactive application of *Hudson,* and the court found no harm after fees had been returned to all non-members and the policies changed; the language distinguishing the two groups was pure dicta. *Gilpin,* 875 F.2d at 1312–13. In *Kidwell,* the court also retroactively applied *Hudson* and denied the expansion of the class certification because some objectors had received refunds and some had not. *Kidwell,* 946 F.2d at 305. In *Weaver,* anti-union activities had occurred and the plaintiffs sought punitive damages; the court did not believe that certification of the class was necessary because the benefit secured by plaintiffs would inure to all non-members automatically when the union complied with *Hudson. Weaver,* 970 F.2d at 1530–31. In *Pilots Against Illegal Dues,* the conflict arose from a misleading letter that plaintiffs sent out. *Pilots Against Illegal Dues,* 938 F.2d at 1134. Thus, the factual circumstances of those cases are different from the case at bar.

Second, *Gilpin* is not persuasive because the Ninth Circuit has not denied class certification based on the types of reasoning and arguments used in *Gilpin.* The Ninth Circuit found in *Kayes* that the plaintiff's alleged animosity toward the defendant would further the zealous prosecution of the case.

---

6. Individuals who were not union members at the time of the alleged *Hudson* violations but have since become members will be exempted

from the class. These people are not similarly situated to those who have not joined the union. *See Mitchell,* 744 F.Supp. at 940 n. 3.

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir.1995). In *Blackie,* the court held that speculative conflicts of interest at the outset of a case were not sufficient to deny certification of a class. *Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975). The factual bases of these two cases were different from the case before the court. While these cases are not dispositive of this case, they do illustrate that the Ninth Circuit is not inclined to deny class certification based on the *Gilpin* reasoning.

Moreover, several district courts and the D.C. Circuit have explicitly rejected the *Gilpin* line of cases. For example, the D.C. Circuit in *Abrams v. Communications Workers of Am.,* 59 F.3d 1373, 1378 (D.C.Cir.1995) held that certification was proper because "all agency shop employees can assert a common interest for the purpose of class certification in challenging the adequacy of the union's notice." Although the Ninth Circuit has not ruled directly on this issue, two district courts within the Ninth Circuit have chosen to follow the D.C. Circuit. *See Cummings v. Connell,* No. CIVS992176WBS DAD, 1999 WL 1256772, at *5 (E.D.Cal. Dec.20, 1999) (addressing this issue under adequacy of representation requirement); *Leer v. Wash. Educ. Assoc.,* 172 F.R.D. 439, 446–47 (W.D.Wa.1997) (same). Both courts reasoned that all members of the proposed class had a common interest in ensuring compliance with *Hudson.* In each case the court concluded. that because punitive remedies were not available, divergent goals within the class did not exist and certification was proper. *See id.* In *Cummings,* the court stated that if it later became clear that plaintiffs were seeking punitive remedies, the court could consider decertification or other actions. *Cummings,* 1999 WL 1256772, at *5.

■ Defendants argue that this case is different because the plaintiff seeks punitive damages as a part of his relief.[7] However, the majority of the relief sought, declaratory and injunctive relief, as well as nominal and compensatory damages and costs, are not punitive remedies. Before reaching the issue of punitive damages, the court will first need to address the declaratory and injunctive remedies sought by plaintiff. These remedies apply equally to all members of the proposed class. To the extent that any members of the class are entitled to damages, including restitution, the formula for the calculation of damages will be the same for all members.[8] When the damages phase of the trial begins, the court may certify a subclass of employees seeking punitive damages if there appears to be a conflict ·of interest between members of the larger class.[9] However, at this early phase of the litigation, the

---

**7.** Defendants cite *Prescott v. County of El Dorado,* 177 F.3d 1102 (9th Cir.1999), *rev'd on other grounds,* 204 F.3d 984 (9th Cir.2000) (reversing on remand from United States Supreme Court) for the proposition that restitution is a form of punitive damages which are disfavored in the Ninth Circuit. In *Prescott,* the court found that the defendant had not willfully violated *Hudson* but had simply misunderstood the details of the requirements, which were clarified in the decision. *See id.* at 1109–11. While *Prescott* may be on-point in the present action, several other issues must be decided first, including whether the defendants have violated *Hudson* and if the violations were willful. Only after those issues are decided will the court address the issue of punitive damages.

**8.** During oral arguments, the court asked plaintiff about the damages available in this type of case and about how this remedy would differ from the enhanced rebate offered by defendants in the November 1999 notice. Plaintiff did not appear to want to deal with whether or not a class action was necessary, given the administra-

tive burden on the parties and the court and plaintiff's inability to articulate the exact remedies available in the case. This court will scrutinize carefully any attempt to recover attorneys' fees in this case by looking at the time spent on the case and the ultimate benefit to the members of the class.

**9.** The court does not have an obligation to create, *sua sponte,* appropriate subclasses in a class action where they are not pled by the plaintiff. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 408, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The court may do so, however, during the pendency of the case in response to factual developments that take place. *See Fed.R.Civ.P. 23(c)(4); Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.1983). "[I]n the event that liability is found, and the logistical difficulties of apportioning damages prove to be severe, this [c]ourt may choose to decertify the class" and create subclasses. *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,* Nos. 1:95–CV–141, 1:95–CV–290, 1996 WL 739170, at *9 n. 10 (W.D.Mich. 1996).

common issues of law and fact outweigh speculation about a possible conflict during the damages portion of the trial.

Based on the above, this court finds that there are significant common questions of law and fact in the proposed class. If needed, the court can later certify a subclass of objectors pursuing punitive damages.

### C. *Typicality*

■ Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class. To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. It is sufficient if his allegations are derived from the same remedial and legal theories. *See Kraszewski,* 27 Fair Empl. Prac. Cas. at 31; *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 489 (N.D.Cal.1978).

Here, plaintiff alleges that he did not receive proper *Hudson* notice and that the union did not have proper *Hudson* procedures for the resolution of disputes and the escrow of funds. These claims are typical of all class members. The constitutional violations suffered by plaintiff is typical of that suffered by all non-union employees who had the agency fees deducted while the union failed to comply with *Hudson.*

■ Defendants contend that Murray is not typical of the class because he is an objector who has struggled with the union over his status as a fee payer. Simply because Murray has objected to the union's unconstitutional actions does not make him atypical for the purposes of a class action suit. If it did, class actions could never be certified until every member of the proposed class came forward to assert his rights. Such a theory is impractical and contrary to the purpose of the class action suit. Defendants further allege that Murray is not a suitable representative because he seeks punitive damages. However, as discussed above, this potential conflict of interest can be remedied, if necessary, by certifying a subclass for the purpose of punitive damages.

Defendants again cite *Gilpin* and its progeny as cases where agency fee payers have failed the test for typicality. A majority of the courts considering this issue have found that fee payers met the test for typicality. *See, e.g., Mitchell,* 744 F.Supp. at 939–40; *Hohe,* 128 F.R.D. at 70; *George,* 117 F.R.D. at 370–71; *Damiano,* 644 F.Supp. at 1059. Further, factual differences between *Gilpin* and this case make *Gilpin* inapposite. Because plaintiff's claims are typical of those made on behalf of the class, plaintiff has satisfied Rule 23(a)(3).

### D. *Representation*

■ Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. Courts have interpreted this to mean that the class representatives' attorneys must be qualified and experienced and that the interests of the representative plaintiff must not be antagonistic to those of the remainder of the class. *See Harriss v. Pan Am. World Airways, Inc. et al.,* 74 F.R.D. 24, 42 (N.D.Cal.1977) (citing *Eisen,* 391 F.2d at 562–63). There is no reason to conclude that class counsel is incapable of proceeding in this action or that the interests of the named plaintiffs would be adverse to those of the rest of the class.

Defendants attack plaintiff's counsel as inadequate because the Right to Work Legal Defense Foundation (the "Foundation") represents people who are hostile to unions. Defendants cite *Kidwell* and *Gilpin,* in which the court held that the Foundation did not provide adequate legal counsel. As discussed previously, these cases differ factually from this action and do not bind this court. In *Gilpin,* the court held that the Foundation was not adequate counsel because the class was seeking punitive damages while some members of the class only wanted to get their money back and not destroy the union. *Gilpin,* 875 F.2d at 1313. This holding has nothing to do with the Foundation's ability to represent the class, but is based on an alleged conflict within the class itself. This court does not face that problem at this point. *Kidwell* simply cites to *Gilpin,* with absolutely no reasoning, in holding the Foundation to be inadequate counsel. *Kidwell,* 946 F.2d at 305. Since the *Gilpin* decision, two district courts within the Ninth Circuit and a district court in Michigan have found

the Foundation to be adequate counsel. *See Cummings,* 1999 WL 1256772, at \*5; *Leer,* 172 F.R.D. at 439 (no discussion of adequacy of counsel and class certified); *Bromley v. Mich. Educ. Assoc.—NEA,* 178 F.R.D. 148, 162 (E.D.Mich.1998).

█ Defendants have not challenged but instead conceded the legal acumen of the Foundation. As discussed in *Bromley,* plaintiff's counsel are bound by the same ethical and procedural rules as defense counsel. *Id.* The Foundation's political activities are wholly divorced from this case. This court does not find this to be a sufficient basis for disqualification of the Foundation as counsel.

Defendants attack Murray as the class representative by claiming that he holds a principled opposition to the union and bears it ill will. Defendants misconstrue Murray's deposition testimony to reach such a conclusion, pointing to nothing more than plaintiff's actions in attempting to assert his constitutional rights as protected by *Hudson.* The fact that Murray has shown frustration with the union's inaction for over a year does not make Murray an inadequate representative for this class. In fact, Murray's dedication and perseverance strengthen the finding that Murray is an adequate class representative.

Defendants also point to the three alleged classes they believe exist within the class asserted by plaintiff. However, as discussed above, the majority of the claims in this case relate to all of these alleged groups. Only plaintiff's request for punitive damages could be construed as contrary to the interests of the other parties, and this court can certify a subclass to avoid this potential conflict. Thus, both counsel and the named representative meet the requirements of Rule 23(a)(4).

## II. *Rule 23(b) Factors*

Having met the requirements of Rule 23(a), plaintiff must next demonstrate that the proposed class fits into one of the Rule 23(b) categories. Here, plaintiff seeks class certification under Rule 23(b)(1)(a) or 23(b)(2).

### A. *Rule 23(b)(1)(a) Certification*

A class may be certified under Rule 23(b)(1)(a) where "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class." Fed. R. of Civ. P. 23(b)(1)(a).

█ Defendants argue that there is no risk of inconsistent adjudications because no one other than Murray is likely to sue. After the November 1999 notice was sent, 113 people objected either to having fees taken or to the calculation. There is no reason to assume that these objectors or other non-union employees will not further pursue their interests in a lawsuit.

Defendants also urge that there is no risk of incompatible judgments when the claim is for damages. Plaintiff seeks declaratory, injunctive and monetary damages. Were multiple suits to be brought, there would be a risk of inconsistent findings as to the propriety of injunctive relief and the procedural improvements required of defendants to comply with *Hudson.* Therefore, the class may properly be certified as a Rule 23(b)(1)(a) class.

### B. *Rule 23(b)(2) Certification*

A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. of Civ. P. 23(b)(2). Rule 23(b)(2) certification is not proper where monetary claims predominate. *See Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 451 (N.D.Cal.1994) (citing 1 H. Newberg, *Class Actions* § 4.14, at 4–49 (3d ed. 1992)) ( "[W]hether plaintiffs' damage claims may be certified as part of a(b)(2) class action depends on whether inclusion of those claims with plaintiffs' claims for injunctive relief would render the suit one 'relat[ing] . . . predominantly to money damages.' "). Where equitable relief is sought, a request for monetary relief does not destroy Rule 23(b)(2) status. "Where the monetary relief sought is integrally related to and

would directly flow from the injunctive or declaratory relief sought, 23(b)(2) status is appropriate." *Souza v. Scalone,* 64 F.R.D. 654, 658 (N.D.Cal.1974), *vacated on other grounds,* 563 F.2d 385 (9th Cir.1977).

While defendants urge that the central issue to be litigated in this case is damages, principally punitive damages, plaintiff seeks injunctive and declaratory relief. Only after a finding that injunctive and declaratory relief are appropriate may the possibility of damages arise in this case. Therefore, the class may properly be certified as a Rule 23(b)(2) class.

*CONCLUSION*

For the foregoing reasons, the court hereby GRANTS plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(1)(a) and (b)(2) and finds that the class may be certified as "all individuals who, at any time since July 1, 1998, were state employees in State Bargaining Unit 19, were not union members, and had 'fair share fees' taken from their pay," excepting those non-union employees who voluntarily elected to become members of the union after that date. This order is subject to modification should the court determine that such modification is warranted either by the evidence or applicable law.

IT IS SO ORDERED.