Jeff L. **LEER, et al., Plaintiffs,**

v.

**WASHINGTON EDUCATION ASSOCIATION, et al., Defendants.**

No. C96–1612Z.

United States District Court, W.D. Washington.

April 30, 1997.

Steven Thomas O'Ban, Ellis, Li & McKinstry, Seattle, WA, Milton L. Chappell, National Right to Work Legal Defense Foundation Inc., Springfield, VA, for plaintiffs.

Catherine Coyne O'Toole, Washington Education Ass'n, Federal Way, WA, Michael J. Gawley, Law Offices of Michael J. Gawley, Seattle, WA, Robert H. Chanin, Alice O'Brien, John M. West, Bredhoff & Kaiser, Washington, DC, for Defendants.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on the plaintiffs' motions for plaintiff class certification (docket no. 14) and defendant class certification (docket no. 16). The Court, having considered all papers filed in support of and in opposition to the plaintiffs' motions, including the supplemental briefs requested by the Court,[1] hereby GRANTS in part and DENIES in part the motion to certify a plaintiff class, and DENIES the motion to certify a defendant class.

For the reasons stated in this Order, the Court certifies the following two plaintiff subclasses:

(1) *Adequacy-of-Notice Claim:* All nonmember public school district employees who at any time from July 1, 1994 through the 1996–1997 school year were or are represented exclusively for purposes of collective bargaining by Defendants and were subject to demands for or collections

---

1. By Minute Order entered February 21, 1997 (docket no. 24), the Court requested supplemental briefing on the applicability of *La Mar v. H &* *B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973), to these motions.

of agency fees for the WEA and any of its affiliates.

(2) *Chargeability Claims:* All nonmember employees who at any time from July 1, 1994 through the 1996–1997 school year were required to pay an agency fee to the WEA or NEA under a compulsory unionism agreement with a public employer authorized by RCW 41.59.060 & 41.59.100 and who objected to the WEA-determined fee pursuant to the objection procedures established by the WEA.

The Court DENIES the plaintiffs' motion for a defendant class as to both the notice and chargeability claims.

### Background

Each named plaintiff is a public school employee who is not a union member but is represented for collective bargaining purposes by a local association/affiliate of the Washington Education Association. Although the plaintiffs are not members of the union, the union is entitled to charge them a fee, commonly known as an "agency fee," which represents the nonmembers' pro rata share of the expenses the union incurs in negotiating and administering the collective bargaining agreement. Agency fees are limited to collective bargaining expenses, and no part of an agency fee may be used to advance the union's political or ideological goals. If a nonmember discovers that any part of the agency fee has been used for such purposes, the nonmember may file an objection to the fee and seek a rebate of the portion of the fee improperly charged.

Each defendant local affiliate has entered into a collective bargaining agreement that requires the collection of agency fees from all nonmember school employees represented by affiliates of the WEA. Under the governing documents of the WEA and NEA, membership in the local association also constitutes membership in the WEA, NEA, and the area-wide UniServ Council, and thus members must pay dues to all four organizations. Nonmembers, like members, pay fees to all four organizations. The local affiliates serve as agency fee collection agents for the UniServ councils, WEA and NEA; they retain their own local portion and then transmit the balance to the regional, state, and national organizations.

Pursuant to RCW §§ 41.59.060 & 41.59.100, agency fees are equal to the dues paid by union members. If a nonmember objects to using his or her fees for political or ideological purposes, and the nonmember files a timely objection, that nonmember will be required to pay only the "chargeable" portion of the fee, i.e., that portion attributable only to collective bargaining efforts. Each year the NEA and WEA calculate and establish their respective chargeable portion of the fee that objecting nonmembers are required to pay. For the 1996–97 school year, NEA calculated its chargeable fee as 62% of its per capita dues. WEA calculated its chargeable fee as 83.6% of its per capita dues. The local affiliates do not calculate their own portion of the chargeable fee; rather, for administrative convenience, the local affiliates apply the WEA percentage of chargeable activities to determine the local and UniServ council chargeable fees.

The named plaintiffs are twenty objecting nonunion members. The named defendants are the WEA, the NEA, fifteen UniServ Councils, and seventeen "subordinate affiliated local associations" of defendants WEA, NEA, and the respective UniServ Councils.

Plaintiffs seek to have this case proceed as a class action, with two subclasses of plaintiffs and one defendant class. The first putative subclass of plaintiffs consists of "all nonmember public school district employees who at any time since July 1, 1994, and/or any future school year are/were/will be represented exclusively for purposes of collective bargaining by Defendants and were subject to demands for or collections of agency fees for the WEA and any of its affiliates." Stated simply, the first subclass, if certified, would include all nonmembers obligated to pay agency fees. This group of plaintiffs claims that the Union has collected agency fees without providing the procedural safeguards required by the First and Fourteenth Amendments. They allege specifically that the NEA, WEA, UniServ Councils, and local associations have each failed to provide detailed disclosure of their expenditures, verified by an independent auditor.

The second putative subclass of plaintiffs consists of "all nonmember employees who in the 1994–95, 1995–96, 1996–97 and/or subsequent school years were required to pay an agency fee to the WEA, NEA, and any of their local affiliates under a compulsory unionism agreement with a public employer authorized by RCW §§ 41.59.060 & 41.59.100 and who objected to the WEA-determined fee pursuant to the objection procedures established by the WEA." This subclass would consist of all nonmembers who have filed objections to the agency fees charged. These plaintiffs challenge the WEA-determined fee and contend that they are paying more than their pro rata share of constitutionally chargeable expenses.

The plaintiffs also seek to certify a class of defendants consisting of "all UniServ Councils and local associations affiliated with Defendant WEA (collectively "local affiliates") which collect agency fees from nonmembers." Plaintiffs believe that there are at least 100 such local affiliates of the WEA.

The plaintiffs seek, in addition to injunctive relief, a declaratory judgment that RCW §§ 41.59.060 and 41.59.100, as well as the WEA's agency shop agreements, and objection and challenge procedures, violate the First and Fourteenth Amendments because (1) members of the first subclass have been required to pay agency fees without receiving adequate disclosure of union expenditures and allocations first, and (2) nonmember employees who challenge the amount of the fee are required to pay agency fees equal to full union dues until the culmination of their challenges, instead of immediately receiving a rebate of the union-determined nonchargeable portion.

The plaintiffs also seek damages. The first subclass seeks an award of compensatory or nominal damages, plus interest. *See* Complaint at 28, ¶ G. The second subclass seeks compensatory damages in the amount of the portion of the agency fee unlawfully collectively by the union, with interest, "and such other amounts as principles of justice and compensation warrant." *Id.* at ¶ H. The plaintiffs also seek costs and attorneys' fees and such other relief as proper.

## Discussion

### A. Validity of Agency Shop Agreements

 A union that has been certified as the exclusive bargaining representative for a group of employees must represent every employee in the bargaining unit, even those who do not belong to the unit. As a result, the union is entitled to charge the nonmembers their pro rata share of the expenses it incurs in negotiating and administering the collective bargaining agreement. That charge (called an agency shop fee) is deducted from the employee's wages by the employer. If a public employer deducts the union's agency fee from its employees' wages, and part of the fee is used to advance the union's political or ideological goals (as distinct from defraying the union's expenses of negotiating and administering the collective bargaining agreement), both the public employer and the union can be held liable in a suit under 42 U.S.C. § 1983 for violating the nonmembers' right of free speech under the First and Fourteenth Amendments. *See Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

 The First Amendment requires that unions give nonmembers notice of what their fair share of dues will be (sometimes called "fair share notice"). *Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). As to the content of this fair share notice, courts have held that the First Amendment "requires only that the union disclose as part of its initial explanation to employees (1) such information that reveals to the employees major descriptive categories of expenses which will be assessed against the employees; (2) the component dollar amount of each category so chargeable; and (3) information to show that the financial figures have been verified by an independent auditor." *Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283, 303 (4th Cir.1991) (quoting *Dashiell v. Montgomery County, Maryland*, 925 F.2d 750, 757 (4th Cir.1991)), *cert. denied*, 503 U.S. 1005, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992). *See also Abrams v. Communications Workers of America*, 59 F.3d 1373, 1379 (D.C.Cir. 1995) (noting that Hudson held that "[b]asic

considerations of fairness ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee."). The First Amendment also requires the public employer and the Union to establish procedures, including notice and right to a hearing, for determining how much of the agency's proposed agency fee is proper. *Hudson*, 475 U.S. at 307, 106 S.Ct. at 1076. The nonmembers, upon receiving their fair share notice, must be given a opportunity to object to the fee, and the union must "provide for a reasonably prompt decision [on the propriety of the fee] by an impartial decisionmaker." *Id.*

Here, one subclass of plaintiffs (consisting of all nonmembers who must pay agency fees) claims that the fair share notice they have been given is inadequate in that it fails to meet the standards set forth in *Hudson.* These plaintiffs allege that they have been required to pay agency fees without receiving disclosure of the major categories of union expenditures and allocations between chargeable and nonchargeable components, verified by an independent audit. *See* Complaint at ¶ 77. The second subclass of plaintiffs (consisting of all nonmembers who have objected to the agency fees) claims that the fees collected are excessive and that the nonmembers have been required to pay agency fees "for constitutionally nonchargeable purposes or for purposes as to which Defendants cannot meet their burden of proving chargeability." *See* Complaint at ¶ 83.

### B. *Requirements for Class Certification*

■ In order for a class action to be maintained, the plaintiffs must meet all the requirements of Rule 23(a) and satisfy the criteria in at least one of the categories in Rule 23(b). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(1) allows an action to be maintained as a class action if

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protects their interests; ...

Fed.R.Civ.P. 23(b)(1).

Rule 23(b)(2) permits a class action to be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

A third type of class action may be maintained under Rule 23(b)(3), which allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Plaintiffs here contend that both subclasses meet the requirements of Rule 23(a) and all three subdivisions of Rule 23(b), but to avoid "the procedural complications of (b)(3)," they ask to be certified under Rule 23(b)(1)(A) and Rule 23(b)(2).

### C. *Adequacy of Class Representatives*

#### 1. *Gilpin*

The defendants argue that both subclasses of plaintiffs fail to meet the requirement of Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class." The defendants' adequacy-of-representation argument is based primarily on *Gilpin v. American Federation of State, County, and Mun. Employees, AFL–*

*CIO*, 875 F.2d 1310 (7th Cir.), *cert. denied*, 493 U.S. 917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989), and other cases applying similar reasoning.

In *Gilpin*, nine nonunion state employees brought suit challenging the adequacy of the fair share notice as well as the propriety of the agency fee. The plaintiffs sought to certify a plaintiff class of 10,000 nonunion members. Judge Posner, affirming the district court's denial of class certification, stated:

> A potential serious conflict of interest within the class precluded the named plaintiffs from representing the entire class adequately. Two distinct types of employee will decline to join the union representing their bargaining unit. The first is the employee who is hostile to unions on political or ideological grounds. The second is the employee who is happy to be represented by a union but won't pay any more for that representation than he is forced to. The two types have potentially divergent aims. The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members. The "restitution" remedy sought by the National Right to Work Legal Defense Foundation, which represents the nine named plaintiffs, is consistent with—and only with—the aims of the first type of employee.

*Id.* at 1313 (citations omitted). The court noted that the Foundation was seeking repayment to all nonmembers of the entire agency fees collected by the union in the 1985 and 1986 school years, even though an arbitrator had determined that the union was in fact entitled to *more* than the amount it actually collected in those years. The Foundation did not challenge the arbitrator's findings or conclusions, but nevertheless sought a refund of all fees. The court concluded that the "restitution" of all fees would confer a windfall on the nonunion employees and embarrass the union financially. Those

plaintiff class members who wanted to destroy the union might have been satisfied with such a result, but the free riders would not want so punitive a remedy. As a result, the National Right to Work Legal Defense Fund was not an adequate litigation representative of those employees. *Id.*[2]

Other circuit courts have followed *Gilpin* and denied class action status to actions brought by nonunion members challenging agency fees. *See, e.g., Kidwell v. Transportation Comm. Intern. Union*, 946 F.2d 283, 305–06 (4th Cir.1991) (the National Right to Work Foundation was not an adequate litigation representative for those nonunion employees who, while not wanting to pay more than their fair share, had no desire to ruin the union or impair its ability to represent them effectively); *Pilots Against Illegal Dues v. Air Line Pilots Ass'n*, 938 F.2d 1123, 1133–34 (10th Cir.1991) (upholding denial of class certification based on potential conflict of interest among class members as explained in *Gilpin*); *Weaver v. University of Cincinnati*, 970 F.2d 1523, 1530–31 (6th Cir. 1992), *cert. denied*, 507 U.S. 917, 113 S.Ct. 1274, 122 L.Ed.2d 668 (1993) (plaintiffs' choice of remedies—both punitive damages and a return of all fees assessed before the union met *Hudson's* procedural requirements—was arguably antagonistic to the wishes of free riders and other employees, and therefore class certification of adequacy-of-notice claims was denied).

While most circuit courts have followed *Gilpin*, the D.C. Circuit has certified a class of nonunion members for purposes of challenging the adequacy of the Union's notice under *Hudson*. In *Abrams v. Communications Workers of America*, 59 F.3d 1373, 1377–78 (D.C.Cir.1995), the plaintiffs sought to certify a class of all nonmembers of the CWA who were subject to collective bargaining agreements requiring them to pay fees as a condition of employment. The district court denied certification, reasoning that objections to agency fees cannot be presumed, and the requisite typicality of claims was absent. The court of appeals rejected that

---

**2.** As an alternative reason for denying class status, the court held that there was no legitimate need for a class because the union's policy was to

refund any overcharges determined by the arbitrator to all nonunion members, whether or not they were parties to the arbitration. *Id.*

holding, concluding that all agency shop employees had a common interest in the adequacy of the union's notice alerting them to their right to object to full payment of union dues. The court explained:

> It is irrelevant to the notice issue whether an agency shop employee later becomes an "actual" objector or remains a "potential objector" since the union must provide notice *in advance of* an employee's decision to object. All members of the class sought to be certified have an interest in requiring the Union to fully inform them of their objection rights so they can decide whether to exercise them. The district court's concern that the relief sought may not be typical of all class members is answered by the same analysis. If the Union's notice were found to be inadequate, all workers would be entitled to injunctive and declaratory relief.

*Id.* at 1378 (footnote omitted). The court of appeals also held that the district court had erred in refusing to certify a subclass of "true dissenters" who had objected to paying full agency fees. The court concluded that such a subclass should be certified for purposes of challenging the adequacy of CWA's objection procedure.[3]

The Ninth Circuit has not commented on the *Gilpin* decision or squarely addressed under what circumstances it is appropriate to certify a class of nonmembers challenging an agency shop fee. In arguing that *Gilpin* should not be applied here, the plaintiffs rely on the district court case of *Mitchell v. Los Angeles Unified School Dist.*, 744 F.Supp. 938, 939–40 (C.D.Cal.1990), *rev'd on other grounds*, 963 F.2d 258 (9th Cir.1992), *cert. denied*, 506 U.S. 940, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992). In *Mitchell*, the district court certified a class of all nonunion school district employees in an action challenging the adequacy of the fair share notice and the collection of amounts in excess of the nonunion members' fair share. There, the district court found that the claims of the named plaintiffs were typical of the class members because the First Amendment interests of all nonunion members were impaired by the defective *Hudson* notice, regardless of whether they objected to the fee notice or not. The court did not discuss, however, *Gilpin* or the issues raised in that case. Moreover, although *Mitchell* was appealed to the Ninth Circuit, the issue of class certification was not raised on appeal. Thus, *Mitchell* provides little guidance to this Court on the *Gilpin* issue.

■ The Court concludes that *Gilpin* is not dispositive here and provides an insufficient basis in and of itself for the blanket denial of class certification. As to the first subclass, the Court agrees with the D.C. Circuit that *all* agency shop employees have a common interest in ensuring the adequacy of the union's notice alerting them to their right to object to full payment of union dues. The concerns raised in *Gilpin* about the potentially conflicting motivations of the free riders and the anti-union plaintiffs are not present with respect to this notice subclass because the remedies sought by the subclass are not punitive in nature, as they were in *Gilpin*. In *Gilpin*, the plaintiffs sought restitution of *all* fees paid, even though an arbitrator had found that the unions had actually undercharged the plaintiffs. The Seventh Circuit characterized such a remedy as a "windfall" to the plaintiffs and a financial embarrassment to the union. Here, the first subclass is seeking primarily declaratory and injunctive relief. Clearly, there is no risk of a windfall to plaintiffs or financial embarrassment to the union with respect to plaintiffs' claims for injunctive and declaratory relief on their notice claim.

The plaintiffs also seek damages, but those damages are limited to "compensatory or nominal damages," plus interest. With respect to compensatory damages, the plaintiffs have not specified in their Complaint or briefs the type of harm they seek to be compensated for or the amount of compensatory damages sought. Because the plaintiffs have left their prayer for compensatory damages vague, there is some risk that plaintiffs who are hostile to the union on political and

---

3. The "true dissenters" in *Abrams* argued that CWA's objection procedure violated the union's duty of fair representation by requiring objectors to object within a limited window period each year and to renew their objections annually.

ideological grounds will seek damages that exceed those sought to be recovered by the free riders, thereby giving rise to a conflict between the two types of plaintiffs. Thus, to the extent the Court permits the first subclass to assert its adequacy-of-notice claim as a class claim, it will do so only to the extent the plaintiffs seek injunctive or declaratory relief, plus nominal damages.

As to the second subclass, the plaintiffs are limiting that class to those nonmembers who have objected to the agency fee. As in *Gilpin,* there can be different reasons why a nonmember would object to the fee: the free riders want to pay as little as possible for union representation, while the anti-union nonmembers don't want union representation at all. All objectors have a right, however, to have agency fees limited to their fair share. Unlike in *Gilpin,* the second subclass here seeks only compensatory damages in the amount of the portion of the agency fee unlawfully collected by the union, plus interest. *Id.* at ¶ H. The plaintiffs are not seeking a return of all fees or an award of punitive damages. Because the plaintiffs seek only damages in the amount of the excess fees paid, the concerns about financially punishing or ruining the union are not present here. Thus, *Gilpin* is distinguishable and does not in and of itself preclude certification of the second subclass of plaintiffs.

While *Gilpin* does not provide a sufficient basis for denying certification of the plaintiff classes, there are other issues that must be considered in evaluating whether the typicality and adequacy of representation requirements of 23(a) are satisfied in this case.

### 2. *La Mar*

The named plaintiffs in this case have paid agency fees to certain local associations but not others. The named plaintiffs have not been harmed by, and thus have no claim against, local associations that they have not paid agency fees to. Nevertheless, they seek to assert class claims against these other local associations because they purport to represent the interests of nonmembers who have had to pay agency fees to the other defendants. This raises the issue of whether the claims of the named plaintiffs are typical of those of the plaintiff class, and whether the named plaintiffs and named defendants are adequate representatives of the classes they seek to represent.

In *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973), the Ninth Circuit held that a plaintiff who has had no dealing with a particular defendant cannot have a claim typical of persons who have dealt with that defendant. According to the Ninth Circuit, the typicality requirement of Rule 23(a)(3) prevents a plaintiff who has been harmed by one defendant from instituting a class action naming additional defendants who have not harmed plaintiff individually, but rather have engaged in similar conduct that has harmed others. The court stated, "The third prerequisite is that the claims of the representative parties be typical of the class. Obviously, this requirement is not met when the 'representative' plaintiff never had a claim of any type against any defendant." *Id.* at 465. The court reasoned that

A plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other then the defendant and even though his attorney is excellent in every material respect.

*Id.* at 466. Thus, a class representative lacks the requisite typicality to litigate a claim against a defendant that the representative cannot sue individually. The exception to this rule is where the plaintiffs have alleged a conspiracy or concerted scheme among all the defendants, or where "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.*

"A 'juridical relationship,' often also called a 'juridical link,' refers to some type of legal relationship which relates all defendants in a way that would make single resolution of a dispute preferable to a multiplicity of similar actions." *In re Itel Securities Litig.,* 89 F.R.D. 104, 121 (N.D.Cal.1981).

*La Mar* only briefly discussed what types of relationships might qualify as "juridical links," and cited a few prior cases where a juridical link was present. Such cases generally involved class actions brought against state officials applying a common rule. Even though the plaintiff class representatives in those cases did not have a cause of action against each defendant, the court reasoned that a "common rule applied by instrumentalities of a single state" presents a juridical link sufficient for maintaining an action as a class action. *La Mar*, 489 F.2d at 470. *See also Akerman v. Oryx Communication, Inc.*, 609 F.Supp. 363, 376 (S.D.N.Y.1984) (noting that juridical link exists where "plaintiff class as a whole has been victim of a unified governmental policy carried out by the individual defendants"), *aff'd*, 810 F.2d 336 (2nd Cir.1987); *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.1979) (county sheriffs named as a class of defendants implementing a statewide administrative practice of denying contact visitation rights to prison inmates), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Turpeau v. Fidelity Financial Services, Inc.*, 936 F.Supp. 975, 978–79 (N.D.Ga.1996) (no juridical link among defendant lenders and life insurance companies although each allegedly violated same state statute in same manner; defendants were not state officials charged with enforcing state statute or common rule or practice), *aff'd*, 112 F.3d 1173 (11th Cir. 1997).

The juridical link discussed in *La Mar*—the link among government officials enforcing a uniform policy—is not the only type of juridical relationship recognized by the courts. In *Itel*, a securities class action, the district court held that there was a sufficient legal relationship among the defendant underwriters to justify class treatment of the plaintiffs' § 12(2) claims against them. The court noted first that the underwriters were already united as a class for purposes of litigating the § 11 claims, and that the § 11 claims and § 12(2) claims involved the same registration statements and prospectuses. In addition, class treatment of the § 12(2) claims was "clearly the most expedient way in which to try the claims, and greatly further[ed] the interests of judicial economy."

*Itel*, 89 F.R.D. at 121. Certifying both the plaintiff and defendant class ensured that the finder of fact would have to make only one determination whether the registration statements and prospectuses were materially misleading, and that determination would be binding on all class members. Otherwise, the district courts would have to determine the issue over 100 separate times. In addition, all the underwriters had identical defenses to both the § 11 and § 12(2), i.e., that the registration statements and prospectuses did not contain untruths or omissions. Under these circumstances, it was "undisputable that defendant class treatment as to one issue under § 12(2)[was] the most manageable, expeditious and convenient way to proceed in this complex litigation." *Id.* at 122.

Some courts have read the *La Mar* exception expansively in Title VII suits, noting that requiring individual suits against each defendant engaging in discriminatory practices would be "contrary to the preference of the courts and the EEOC for industry-wide remedies in Title VII actions." *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 276 (N.D.Cal.1976) (defendant class of employers and unions of 74 food processing and canning plants in Northern California and their collective bargaining agents was certified where the crux of the suit revolved around the operation of the collective bargaining agreement). *See also United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 689–90 (D.D.C.1977) (certifying in a Title VII case a defendant class consisting of all trucking companies that were parties to or bound by the National Master Freight Agreement and area supplements) Other courts have been careful not to expand the *La Mar* exception, noting that a "broad construction of the juridical link exception to *La Mar* obscures the confines of that doctrine." *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y.1986) (the "juridical link" exception is limited to cases where the defendants' conduct "is standardized by a common link to an *agreement, contract or enforced system* which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class." (emphasis added)).

#### a. *Does La Mar Preclude Certification of this Bilateral Class Action?*

Courts have noted that *La Mar* severely restricts the possibility for bilateral class actions in any case where all defendants are not jointly and severally liable to all plaintiffs. *Itel,* 89 F.R.D. at 120 n. 5. However, the Ninth Circuit has never held that bilateral class actions are improper under all circumstances; rather, such actions will be permitted where one of the exceptions to *La Mar* exists.

##### (1) *Class Treatment of the Notice Claim*

██ The named plaintiffs in the first subclass seek to represent all nonmembers in their claim challenging the adequacy of the fair share notice. Under the general rule in *La Mar,* this plaintiff class could not be certified because the named plaintiffs are purporting to represent nonmembers who receive notices from, and pay agency fees to, UniServ councils and local associations other than those that have allegedly harmed the named plaintiffs. The defendant class also could not be certified as to this claim because not all plaintiffs have claims against the named defendants. The Court must consider, however, whether any exception to *La Mar* applies.

Plaintiffs argue that there is a juridical link among all the defendants because WEA acts as the agent for the UniServ Councils and local associations in providing notice to all nonmembers, and the WEA has sent out uniform notices to all nonmembers pursuant to this understanding among the parties.[4] The question is whether delegation of authority to WEA provides a sufficient juridical link such that certification of the defendant class would be appropriate.

The Court concludes that the type of juridical link contemplated by the *La Mar* court is absent here, and certification of the defendant class would be inappropriate. There is no contract, agreement, or enforced system between or among the various defendants which would support a finding that the defendants are juridically related. Plaintiffs describe the relationship among the defendants as "familial," and argue that the familial relationship among the defendants is analogous to that of government officials enforcing a uniform policy. But no court has read or applied the governmental link exception so broadly, and no court has certified a class of such loosely related defendants. This Court is unwilling to expand *La Mar* beyond its stated confines, particularly in light of the fact that there are other ways to structure this lawsuit without the risk of running afoul of *La Mar.*

Because the defendant local associations and UniServ councils have delegated to WEA their authority to prepare and issue the fair share notice, there is no legitimate need for the putative plaintiff class to assert its adequacy-of-notice claims against a class of defendants. Each member of the plaintiff class has a claim against the WEA based on the uniform notice WEA prepares and distributes to all nonmembers on behalf of all the local units. If the plaintiffs proceed as a class against the WEA only, and the plaintiffs prevail on their notice claim against WEA, they will obtain full and complete relief because WEA will have to take any corrective action ordered by the Court. This corrective action will inure to the benefit of all nonmembers, regardless of the local association or UniServ Council the individual nonmember is associated with, because all nonmembers receive the same notice. The Court concludes that under these circumstances, certifying a class of all defendants is unnecessary and would needlessly complicate the proceedings.[5] Accordingly, the plaintiffs'

---

4. Defendants appear to concede in their supplemental response brief that there is an "agreement" between the WEA and the Uniserv councils and local associations to have WEA administer and provide the *Hudson* notice, but no specific agreements have been submitted to the Court in connection with this motion. *See* Defendants' Response to Plaintiffs' Supplemental Brief (docket no. 29) at 5 (WEA issues notice "pursuant to its agreements with [local units] to administer their notice-and-objection procedures.").

5. Even if the plaintiff could establish that a juridical link exists, the putative defendant class fails to meet any of the subsections of Rule 23(b). *See* section C.2(a)(3) of this Order.

motion to certify a defendant class as to the notice claims is denied.

### (2) Class Treatment of the Chargeability Claims

■ The second subclass of plaintiffs, consisting of nonmembers who have objected to the agency fees charged by each of the four organizations, alleges that they have been charged for activities that are not properly chargeable. The Court concludes that there is an insufficient juridical relationship among the UniServ Councils and local associations to justify certifying a defendant class of national, regional, and local units.

"The focus [in La Mar] must be on the defendant representative because the questions of typicality and adequacy of representation respond to the typical nature of this defendant's defenses and the adequacy of this defendant's representation to the defendant class." Itel, 89 F.R.D. at 119–20. Here, the defenses of the named defendants are not typical or representative of the defendant class.

The plaintiffs claim that the local associations and UniServ Councils are charging more than their fair share of chargeable expenses. While each local association applies the same percentage figure to arrive at its agency fee, whether the application of that percentage results in nonmembers paying more than their fair share of chargeable expenses turns on individual circumstances. It is conceivable that in some cases charging nonmembers 83.6% of the union members' fee results in an overcharging, while in other cases the resulting figure is too low or just right. It depends on the expenditures of each individual local association and UniServ council. Thus, resolving the plaintiffs' chargeability claims requires looking at each defendants individual circumstances, and each defendant will assert a unique defense. Moreover, there is no allegation here that the defendants are bound by any agreement to apply the percentage set by the WEA in calculating their agency fees; rather, the local associations have chosen to do so for the sake of convenience. Under these circum-

stances, the defendants are not "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." La Mar, 489 F.2d at 466. Thus, the plaintiffs' motion to certify a class of all defendants is denied.

■ The Court concludes that the second subclass of plaintiffs should proceed with class chargeability claims solely against NEA and WEA. This eliminates any La Mar problem because each objecting nonmember has a chargeability claim against both NEA and WEA,[6] and the chargeability claim of the named plaintiffs against these two entities is typical of the claims of the plaintiff class.

### (3) Even If Plaintiff Could Establish a Juridical Link Among the Defendants, the Putative Defendant Class Fails to Meet the Requirements of Rule 23(b)

Plaintiffs seek to certify the defendant class under Rule 23(b)(1)(A) and Rule 23(b)(2). Defendants argue that even if Rule 23(a) is satisfied, certification of the defendant class is nevertheless inappropriate because the defendant class does not meet the requirements of the Rule 23(b) classes. The Court agrees.

#### a. Rule 23(b)(1)(A)

■ Subsection (b)(1)(A) applies when "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct **for the party opposing the class**." (Emphasis added). For this subsection of Rule 23(b) to apply, the party **opposing** the prospective class must be subject to the risk of inconsistent adjudications that would establish incompatible standards of conduct. Winder Licensing, Inc. v. King Instrument Corp., 130 F.R.D. 392, 394 (N.D.Ill.1990). Thus, where the issue is whether a defendant class should be certified under Rule 23(b)(1)(A), the Court must consider whether the **plaintiffs** will be

---

6. According to the notice sent to all nonmembers, the objector need only file one objection to challenge all four levels of fees. See Notice, attached to Complaint, at 3.

subject to incompatible standards of conduct if the defendant class is not certified. *Id.*

Plaintiffs have failed to show that they would be subject to incompatible standards of conduct as a result of separate actions being brought against the defendants. Therefore, certification of the defendant class under Rule 23(b)(1)(A) is inappropriate.[7] *See In re Seagate Technologies Securities Litig.,* 115 F.R.D. 264, 273–74 (N.D.Cal.1987) (court found it "difficult to conclude that plaintiffs would be subjected to 'incompatible standards of conduct' absent certification of defendant class"); *In re Activision Securities Litig.,* 621 F.Supp. 415, 437 (N.D.Cal.1985) (finding certification of defendant class under Rule 23(b)(1)(A) improper; defendant class certified under Rule 23(b)(3)).

Plaintiffs rely upon *Itel,* a securities class action, where the district court certified a defendant class of underwriters as to claims under § 12(2) of the 1933 Act. In that case, however, the defendants were already certified as a class for purposes of the § 11 claim, and both the § 11 claims and the § 12(2) claims required a determination as to whether the Registration Statement and Prospectus was materially misleading. If the class as to the § 12(2) claims was not certified, the plaintiffs who decided to pursue both the § 11 class claims and a separate action to litigate the § 12(2) claims could be faced with different determinations as to whether the Registration Statement and Prospectus was misleading. Thus, each plaintiff could be subject to varying adjudications of the same issue against the same defendant. The Itel court distinguished its case from *McDonnell Douglas Corp. v. U.S. District Court for Cent. Dist. of Calif.,* 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), where the Ninth Circuit held that Rule 23(b)(1)(A) is not satisfied where there is simply a risk that different plaintiffs would suffer inconsistent adjudications: "A quite different situation is presented here as the very same plaintiff would be suffering inconsistent adjudications on the same issue against the same defendant, rather than different plaintiffs suffering inconsistent adjudications." *Itel,* 89 F.R.D. at 125. Thus, *Itel* is distinguishable and has limited application to the plaintiffs' claims against the local units.

#### b. *Rule 23(b)(2)*

Under Rule 23(b)(2), an action may be maintained as a class action if the prerequisites of subsection (a) are met and in addition:

> **the party opposing the class** has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

Fed.R.Civ.P. 23(b)(2) (emphasis added).

In *Henson v. East Lincoln Township,* 814 F.2d 410, 414–17 (7th Cir.1987), *cert. dismissed,* 506 U.S. 1042, 113 S.Ct. 1035, 122 L.Ed.2d 111 (1993), Judge Posner recognized that numerous district courts had certified defendant classes under (b)(2), but noted that there was no discussion in those cases of the legality of doing so. Judge Posner then analyzed the language of (b)(2) and concluded that Rule 23(b)(2) does not apply to defendant classes:

> [T]he language of (b)(2) is against [the plaintiff]. Always it is the alleged wrongdoer, the defendant—never the plaintiff (except perhaps in the reverse declaratory suit)—who will have "acted or refused to act on grounds generally applicable to the class." In this case, for example, the plaintiff class is complaining about the conduct of the named defendants and of the unnamed defendant class members in not promulgating written standards for welfare eligibility and in otherwise not complying with the requirements of due pro-

---

**7.** Although the Ninth Circuit has not addressed this specific issue, the court has interpreted Rule 23(b)(1)(A) narrowly in other contexts. In *McDonnell Douglas Corp. v. U.S. District Court,* 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), the court concluded that "subdivision (b)(1)(A) was not intended to permit class actions simply when separate actions would raise the same question of law.... Instead, 'the incompatible standards of conduct' of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions."

cess. . . . No one is complaining about any act or refusal to act by [the plaintiff] or by any member of the plaintiff class.

*Id.* at 414. Reading the rule literally, certification of a defendant class is inappropriate unless the plaintiff or members of the plaintiff class were acting or refusing to act on grounds generally applicable to the defendant class. Such circumstances would be present in few, if any, civil cases; the only exception might be in reverse declaratory judgment actions, such as where a debtor brings suit against a class of creditors, seeking a declaration of nonliability.

The Fourth and Sixth Circuits, applying similar analyses, have also held that defendant classes cannot be maintained under (b)(2). *See Paxman v. Campbell,* 612 F.2d 848, 854 (4th Cir.1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981); *Thompson v. Board of Educ. of Romeo Community Schools,* 709 F.2d 1200, 1203–04 (6th Cir.1983). The Second Circuit has permitted certification of a defendant class under (b)(2), but only where the plaintiffs were seeking injunctive relief against a class of local public officials. *Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2nd Cir.1979). *See also United States v. Rainbow Family,* 695 F.Supp. 314, 320 (E.D.Tex.1988) ("Although the language of Rule 23(b)(2), if taken literally, would appear to bar certification of a *defendant* class, it has been held an appropriate mechanism for such certification in circumstances . . . where the uniform conduct of multiple defendants is challenged and solely injunctive relief is requested."). The Ninth Circuit has not addressed the issue.

■ While some commentators have argued for a more expansive reading of Rule 23(b)(2),[8] the courts that have carefully analyzed the issue have concluded that defendant classes may not be certified under (b)(2). The Court concludes, as Judge Posner did in *Henson,* that the language of Rule 23(b)(2) is clear, and the better view is to restrict Rule 23(b)(2) to plaintiff classes seeking injunctive relief. It is not for the federal courts to "create new forms of judicial proceeding in the teeth of the existing rules." *Henson,* 814 F.2d at 414. Thus, plaintiffs' motion to certify a defendant class under Rule 23(b)(2) must be denied.[9]

### D. *Under What Provisions is the Plaintiff Class Certifiable?*

The defendants have focused their objections to certification of the plaintiff subclasses on the failure to satisfy the requirements of Rule 23(a), particularly the adequacy-of-representation requirement. They do not argue that the subclasses fail to meet the requirements of Rule 23(b).

The Court concludes that "the prosecution of separate actions by . . . individual members of the [plaintiff] class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the [defendants]." Fed.R.Civ.P. 23(b)(1)(A). Thus, class certification of the plaintiff subclasses class is appropriate under 23(b)(1)(A). Class certification is also appropriate under (b)(2) because "the [defendants] ha[ve] acted or refused to act on grounds generally applicable to the [plaintiff] class, thereby making appropriate

8. Commentators have split on the question. Some agree that the language of (b)(2) precludes its application to defendant classes. *See* Wright, Miller & Kane, 7A *Federal Practice and Procedure* § 1775 at 461–62 ("Although arguments have been made that certification of defendant class suits under Rule 23(b)(2) would be desirable, as well as consistent with the policies underlying the rule, the fact remains that the language is clear, and the better view is to restrict its applicability to plaintiff classes seeking injunctive relief."). Others, while admitting the rule is at least ambiguous, argue that the rule should not be so strictly construed. *See* Newberg & Conte, *Newberg on Class Actions* § 4.65 (the ambiguous rule should be reconciled with overall general

objectives of Rule 23 to permit defendant class actions, particularly in civil rights cases).

9. The plaintiffs do not specifically request that the defendant class be certified under Rule 23(b)(1)(B), but they suggest in a footnote that if the Court is unwilling to certify under either of (b)(1)(A) or (b)(2), (b)(1)(B) is also available. Because the issue has been inadequately briefed, and because the Court is denying the motion to certify defendant class on other, independent grounds, the Court declines to determine the applicability of Rule 23(b)(1)(B). For the same reasons, the Court will not consider the applicability of Rule 23(b)(3).

final injunctive relief or corresponding declaratory relief with respect to the [plaintiff] class as a whole...." Fed.R.Civ.P. 23(b)(2). Accordingly, the plaintiff subclasses meet the certification requirements of Rule 23(b)(1)(A) or (b)(2), and the motion for certification of the plaintiff subclasses is granted.

*Conclusion*

As to the adequacy-of-notice claim, the Court certifies under Rule 23(b)(1)(A) and (b)(2) a plaintiff subclass of all nonmembers, but limits the class claims to claims for injunctive and declaratory relief and nominal damages against the WEA as an individual defendant. The Court DENIES certification of a defendant class as to that claim.

As to the chargeability claims, the Court certifies under Rule 23(b)(1)(A) and (b)(2) a plaintiff subclass of objecting nonmembers, but limits the class claims to claims against NEA and WEA as individual defendants. The Court denies certification of a defendant class as to the chargeability claims for the reasons stated in this Order.

IT IS SO ORDERED.