Richard T. **FELL**, Plaintiff,

v.

**INDEPENDENT ASSOCIATION OF CONTINENTAL PILOTS,**
Defendant.

No. 97–WY–1558–CB.

United States District Court,
D. Colorado.

Nov. 4, 1998.

---

Richard L. Harring, Philip M. Quatrochi, Denver, CO, for plaintiff.

Roland P. Wilder, Jr., Christy Concannon, Washington, D.C., for defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

BRIMMER, District Judge.

## I. Background

In 1993, the Independent Association of Continental Pilots ("IACP") labor organization was formed. On or about August 31, 1995, Continental and IACP entered into a collective bargaining agreement. This agreement was an "agency shop" arrangement that permitted IACP to charge nonunion pilots their fair share of the costs of representation. IACP charged 1.5% of the member-pilots' gross pay for union dues and an equivalent amount for the non-member pilots' "agency fee." IACP prepared its Policies and Procedures Applicable to Agency Fees ("Policies and Procedures") in September of 1995. The Policies and Procedures stated how agency fees were to be collected, the manner in which a pilot may object to agency fees, and the escrow and rebate procedures for that portion of an objector's agency fees which were disputed or which should not have been collected.

Plaintiff Richard T. Fell has been employed by Continental since December 16, 1966 and is not a member of IACP. Fell received a copy of IACP's Policies and Procedures sometime in the fall of 1995. Beginning in February of 1996, IACP and Continental sent Fell various notices that he was delinquent in the payment of his agency fees and would be terminated unless he paid promptly. On May 20, 1996, and again on July 8, 1996, Fell sent a letter to the Secretary/Treasurer of IACP objecting to the use of agency fees for "nongermane" purposes, requesting an accounting of IACP's expenditures, and inquiring about the amount of agency fee dues Fell subsequently owed. On May 23 and 24, IACP responded to Fell's objection letter advising that the non-germane expenses for 1995 would be accounted for at the end of 1996. Fell was also told that he owed IACP $559.86 for the period of November 1995 to January 1996.

In October 1996, Fell received IACP's 1995 Statement of Germane and Nongermane Expenditures (the "1995 SGNE") which designated 100% of its expenses as germane to collective bargaining. In November 1996, Fell, not believing that all expenses were germane, objected to the 100% agency fee amount. In December, IACP indicated that it refused to escrow any amount of Fell's agency fees because Fell did not object to specific items in the 1995 SGNE. By letter dated January 30, 1997, Fell again objected to paying agency fees for nongermane activities, requested that he be given an estimation of what percentage of 1997's agency fees would be germane, and again objected to the classification of 100% of the 1995 agency fees as germane. Mr. Fell never used the arbitration procedures under IACP's Policies and Procedures.

On June 19, 1997, IACP provided all non-union pilots with its 1996 Statement of Germane and Nongermane Expenses ("1996 SGNE") and another copy of its Policies and Procedures. The 1996 SGNE attributed 5% of IACP's expenses to nongermane activities. By letter dated June 20, 1997, IACP provided a $103.23 rebate check to Fell for fees

---

* The Court reissued this opinion after a clerical error was brought to the Court's attention.

collected but which were nongermane to collective bargaining.

Fell brought the instant action against IACP on July 18, 1997, seeking a class action certification and damages that include all illegally assessed agency fees plus costs, interest and attorney's fees. In a prior order, this Court denied class certification. Now before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment.

## II. Standard

The specific standards for summary judgment are well recognized, and need only be briefly restated. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996).

## III. Discussion

Because Continental is a "common carrier by air engaged in interstate or foreign commerce," 45 U.S.C. § 181, the Railway Labor Act ("RLA") governs its bargaining relationship with IACP. Section 2, Eleventh, of the RLA allows employers and unions to use "agency shop" agreements and charge non-union employees an "agency fee" to resolve the problem of "free riders," employees who benefit from a union's representation but do not contribute to the costs of that representation. *Ellis v. Railway Clerks*, 466 U.S. 435, 447, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). Under agency shop arrangements, nonmembers must pay their fair share of union expenditures "necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues." *Id.* at 448, 104 S.Ct. 1883.

 The purposes for which IACP may spend the "agency fee" paid by nonmembers are circumscribed by the First Amendment and the RLA. *Air Line Pilots Assoc. v. Miller,* ─── U.S. ───, ───, 118 S.Ct. 1761, 1763, 140 L.Ed.2d 1070 (1998). Only "germane" costs, those related to the duties of acting as the employees' exclusive representative in executing and upholding the collective bargaining agreement, may be imposed on objecting employees. *Id.* 118 S.Ct. at 1766. For example, the Supreme Court has held that the RLA does not authorize a union to use agency fees from objecting employees to support political candidates or programs. *International Assoc. of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). However, there remains a grey area between clearly germane and clearly political expenses. In *Ellis v. Railway Clerks*, the Supreme Court established a framework for determining between germane and nongermane expenses:

> [T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievance and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.

*Ellis*, 466 U.S. at 448, 104 S.Ct. 1883.

 More recently, the Tenth Circuit cited the Supreme Court's decision in *Lehnert v. Ferris Faculty Association*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), as declaring chargeable activities must "(1) be 'germane' to collective bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Pilots Against Illegal Dues (PAID) v. Air Line Pilots Assoc. (ALPA)*, 938 F.2d 1123, 1127 (10th Cir.1991).

Because agency shop arrangements present risks to employees' rights of free speech, unions must provide fee collecting schemes that are "carefully tailored to minimize the infringement" upon nonunion members' First Amendment rights. *Chicago Teachers Local Union No. 1 v. Hudson*, 475 U.S. 292, 303, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). *Hudson* requires unions and employers to provide three procedural protections for nonunion workers who object to the calculation of the agency fee. A fee-collecting scheme must (1) include a "procedure which will avoid the risk that [nonmember] funds will be used even temporarily, to finance ideological activities unrelated to collective bargaining"; (2) provide nonmembers with adequate information about the basis for the proportionate share of the agency fee charged to them; and (3) "provide for a reasonably prompt decision by an impartial decision maker" when nonmembers object to the amount of the agency fee. *Id.* at 305–307, 106 S.Ct. 1066. In *Hudson*, the agency shop arrangement was with a public employer. Although the Supreme Court has not "expressly stated" whether the same procedures are required in an agency shop arrangement with a private employer like Continental, the Tenth Circuit has assumed that *Hudson* applies in cases like the present one. *PAID*, 938 F.2d at 1132.

It is within this framework that the Court reviews Plaintiff's three claims for relief and the Parties' cross-motions for summary judgment. Plaintiff first claims that Defendant's collection and notice procedures regarding Plaintiff's agency fees are constitutionally inadequate. Second, Plaintiff claims that Defendant has violated the Railway Labor Act ("RLA") and the First Amendment by assessing agency fees from Plaintiff for expenses that are not germane to collective bargaining activities. Finally, Plaintiff claims that the collective bargaining agreement provision authorizing collection of agency fees equivalent to union dues is facially unconstitutional. The defendant raises two affirmative defenses to Plaintiff's arguments. First, Defendant contends that because Plaintiff did not exhaust his arbitrable remedies under the collective bargaining agreement's Policies and Procedures, Plaintiff is barred from asserting his claims. Second,

Defendant contends that Plaintiff's complaints regarding the 1995 SGNE are barred by the Statute of Limitations. The Court first will address Defendant's affirmative defenses.

## A. Exhaustion of Arbitrable Remedies

Defendant contends that summary judgment is warranted for Plaintiff's claims because Plaintiff has not exhausted his available arbitration procedures. Plaintiff claims that because the arbitration provisions of the Policies and Procedures are not in the collective bargaining agreement, Plaintiff cannot be required to exhaust them before bringing this action. The Supreme Court has recently held that "employees need not submit fee disputes to arbitration when they have never agreed to do so." *Miller*, —— U.S. at ——, 118 S.Ct. at 1764. According to the Court, the reason for *Hudson*'s requirement of a "reasonably prompt decision by an impartial decisionmaker," is to protect the interest of agency fee objectors "by affording them access to a neutral forum in which their objections can be resolved swiftly." *Id.* 118 S.Ct. at 1768. Nothing in the Hudson decision "purports to compel objectors to pursue" arbitration. *Id.*

Plaintiff has not agreed to the union's arbitration procedures and thus is not bound by them: "Unless they agree to the procedure, agency-fee objectors may not be required to exhaust an arbitration remedy before bringing their claims in federal court." *Id.* at 1769. Plaintiff's claims are not barred by his failure to exhaust his arbitrable remedies.

## B. The Statute of Limitations and the 1995 SGNE

Defendant also contends that Plaintiff's claims regarding the 1995 SGNE report are barred by the statute of limitations. According to the Tenth Circuit, the statute of limitations begins to run on the date the rebate report is distributed. *PAID*, 938 F.2d at 1134, (citing *Crawford v. Air Line Pilots Ass'n Int'l*, 870 F.2d 155, 159 (4th Cir.1989)). The most analogous statute of limitations that applies is the six month period governing duty of fair representation claims.

*PAID,* 938 F.2d at 1134. Plaintiff admits that he received IACP's 1995 SGNE in October of 1996. (Compl. ¶ 11.) Plaintiff brought this action against IACP on July 18, 1997, over six months from the time he received the report. Plaintiff's claims regarding the 1995 SGNE are thus barred by the statute of limitations.

Plaintiff, however, argues that *PAID* provides that the statute of limitations begins to run when the employee receives constitutionally sufficient notice under *Hudson.* 938 F.2d 1123. Plaintiff claims that because he did not receive enough specific information to gauge the propriety of the union's expenses until this litigation commenced, the statute of limitations should not have begun to run.

The *PAID* opinion, however, does not stand for the proposition asserted by the Plaintiff. In *PAID,* the court of appeals determined that the statute of limitations applied even though the union failed to notify employees that they could challenge the amount of the agency fee. 938 F.2d 1123. According to the court, "the plaintiffs were in possession of the facts underlying a possible claim against the union" before the statute of limitations ran. *Id.* at 1132. In the instant case, Plaintiff admitted in his deposition that he concluded that the union was using monies for nongermane purposes by June 1996. (Fell Dep. at 15.) Plaintiff thus was in "possession of the facts" that would create a "possible claim" against IACP at the time the union issued the 1995 SGNE in October 1996. Indeed, Plaintiff himself argues that "an objector only needs to object in a general manner." (Pl.'s Resp.Def.'s Mot.Summ.J. at 9.)

Nevertheless, for a brief time the Tenth Circuit held that the statute of limitations period does not begin to run until the employee receives constitutionally sufficient notice under *Hudson. Lancaster v. Air Line Pilots Assoc. Int'l,* 76 F.3d 1509, 1528 (10th Cir.1996), *abrogated by Air Line Pilots Ass'n v. Miller,* —— U.S. ——, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998). The court of appeals specifically referenced the *Hudson* requirement that unions provide nonmember employees with enough information that they can determine whether to object to a given assessment. This Court determines that Defendant provided Plaintiff with enough information so that he could determine whether

or not to object. Once again, *Hudson* is instructive:

> The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure would surely include the major categories of expenses, as well as verification by an independent auditor.

475 U.S. at 307 n. 18, 106 S.Ct. 1066.

Defendant has complied with this requirement. In the 1995 SGNE, the IACP itemized its expenses into thirty-six categories, provided for an audit by an independent auditor, and gave employees an explanation of what made a chargeable expense "germane." The statute of limitations thus began to run when Plaintiff received the 1995 SGNE. Because Plaintiff failed to object before the statute of limitations tolled, this Court hereby **FINDS** that Plaintiff's claims regarding the 1995 SGNE are barred. Defendant's Motion for Summary Judgment on Plaintiff's claims relating to the 1995 SGNE are **GRANTED.** The remainder of this opinion will address only the claims arising from the 1996 SGNE.

### C. Plaintiff's Claim that IACP Assessed Agency Fees for Nongermane Expenses

■■■ The Supreme Court has held that while nonunion members may be compelled to contribute their share of costs of collective bargaining, they may not be compelled to contribute funds used to finance causes not germane to collective bargaining. *Abood v. Detroit Board of Ed.,* 431 U.S. 209, 234–36, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). As this Court mentioned earlier, chargeable activities must be "germane" to collective bargaining activity, justified by the government's interest in labor peace and avoiding free riders, and not add significantly to the burdening of free speech that is inherent in the allowance of an agency shop. *See Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). The burden is on the defendant to show that the expenditures were germane. *Hudson,* 475 U.S. at 306, 106 S.Ct. 1066. Whether expenses are germane or nongermane is a matter of law and is appropriately decided by

this Court. *Miller v. Air Line Pilots Assoc.,* 108 F.3d 1415 (D.C.Cir.1997), *aff'd on other grounds, Air Line Pilots Assoc. v. Miller,* 523 U.S. 866, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998). Plaintiff claims that IACP allocations of germane and nongermane expenses were improper in 1995 and 1996.

### 1. The ALPA Merger

In 1995 and 1996, IACP became concerned with the possibility that Continental would merge with another airline, perhaps one whose pilots were represented by the Air Line Pilots Association Union ("ALPA"). Because such a merger may have caused the Continental pilots to lose their seniority status, IACP resolved to attempt to affiliate with ALPA. (Def.'s Ex. 10.) Plaintiff contends, however, that IACP's expenses associated with ALPA are not germane.

In 1996, Plaintiff was not charged for any expenses associated with the ALPA merger because Defendant categorized them as nongermane. In addition, this Court has already ruled that the statute of limitations bars Plaintiff's claims regarding the 1995 SGNE, the only year that ALPA merger expenses were classified as germane. Therefore, Plaintiff's claims regarding the ALPA merger expenses must fail for failure to state a claim upon which relief can be granted.

■ However, even if the statute of limitations did not bar Plaintiff's 1995 claim, his claim with regard to the ALPA merger expenses could not stand because the expenses are germane as a matter of law.[1]

Plaintiff admits that a merger of two air carriers can alter the pilots' seniority expectations, one of the most important aspects of their employment. (Fell Dep. at 21.) In a merger with another carrier, a pilot's seniority number would have to be consolidated in a method worked out between the two groups. (Fell Dep. at 21.) However, when an ALPA-union carrier merges with another ALPA-union carrier, those two carriers have a required integration procedure. (Fell Dep. at 23.)

A merger of Continental with another airline could have significantly affected the seniority status of the Continental pilots under their current collective bargaining agreement. However, if IACP merged with ALPA before Continental merged with an ALPA-union airline, the Continental pilots would have been subject to the ALPA seniority integration formula. Without an affiliation between IACP and ALPA, though, the Continental pilots may have had held little bargaining power in the event of a merger.

According to the Supreme Court in *Ellis,* "objecting employees may be compelled to pay their fair share of ... the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit." 466 U.S. at 448, 104 S.Ct. 1883. Clearly, protecting pilots' seniority, which Plaintiff himself considers to be one of the most important aspects of his employment, is an undertaking "reasonably employed" to effectuate the union's duties as exclusive bargaining representative. Indeed, if IACP did not take measures to protect the pilots' seniority, its employees may have alleged a breach of the duty of fair representation. *See, e.g., Rakestraw v. United Airlines,* 981 F.2d 1524, 1533–34 (7th Cir.1992); *Gvozdenovic v. United Air Lines,* 933 F.2d 1100, 1104 (2d Cir.).[2] Therefore, the expenditures for the ALPA merger should be considered germane.

■ Plaintiff, however, contends that forcing him to pay ALPA merger expenses violates *Lehnert*'s third element by unduly burdening his First Amendment rights. Plaintiff argues that he may prefer that Continental merge with some other union or no union at all. But Plaintiff, as evidenced by his deposition, agrees with IACP that seniority issues are important to the pilots at Continental. (Fell Dep. at 21.) What Plaintiff appears to disagree with is the method that IACP employed to protect seniority. But an "individual cannot withdraw his financial sup-

---

**1.** As the Court will show, the ALPA merger expenses retained their germane character despite the fact that IACP redesignated these expenditures as nongermane in 1996.

**2.** Although these suits were unsuccessful, the cases demonstrate that seniority integration issues have been viewed as a significant aspect of the union's duties towards its pilots.

port merely because he disagrees with the [union's] strategy." *Abood*, 431 U.S. at 223, 97 S.Ct. 1782. Plaintiff "may feel that [his] money is not being well-spent, but that does not mean [he] has a First Amendment Complaint." *Ellis*, 466 U.S. at 456, 104 S.Ct. 1883.

This Court **FINDS** that the ALPA merger expenses are chargeable under the guidelines in *Ellis* and *Lehnert.* Plaintiff's claims on the issue of the ALPA merger thus fails for three reasons: (1) Plaintiff's claims regarding the 1995 SGNE are barred, (2) Plaintiff was not charged for any ALPA merger expenses in 1996, and (3) even if Plaintiff were able to bring a claim on the 1995 SGNE, the ALPA merger expenses were germane. Consequently, Defendant's Motion for Summary Judgment on the issue of the germaneness of the ALPA merger is **GRANTED.**

## 2. Overhead and Administrative Expenses

■ The IACP did not allocate any portion of its administrative or overhead expenses for 1996 to nongermane expenditures. Plaintiff contends that the germane overhead costs should have been reduced at least by a percentage of nongermane costs to total costs.

The IACP determined that in 1996, approximately $161,000 was spent on nongermane activities. However, the IACP also determined that nearly 94% of these costs were incurred for goods and services produced outside the IACP office, leaving a cost of approximately $9700 incurred for nongermane goods and services produced inside the IACP office. Compared to a budget of over $3.2 million, this "in-house" nongermane cost totaled approximately .3%. This expense is minor in relation to the total budget. *See, e.g., Ellis*, 466 U.S. at 450–51, 104 S.Ct. 1883 (.7% of total budget spent on social activities considered *de minimis* ).

■ In general, overhead costs should be allocated in proportion to their relation to nongermane expenses to the extent that the nongermane expenses were incurred on the union's premises or involved union employees' time. For example, if weekly meetings discussing nongermane activities were held at union headquarters, a proportionate amount of rent should be allocated by the union as a nongermane expense. On the other hand, a donation to a political party would not increase nongermane overhead charges in proportion to the value of the donation. General overhead costs to process a check remain constant regardless of the amount of the check. Granted, it would be simpler to designate overhead costs as nongermane in proportion to the amount of nongermane expenditures to total expenditures. However, this simpler method would often be inaccurate.

Defendant bears the burden of proving that its overhead expenses were germane. And, with the exception of employee time records, Defendant has kept contemporaneous records to support all its germane and nongermane expenses. However, Defendant has not proven, in manner sufficient to support summary judgment, that its employees worked 100% of their time on germane activities.[3]

Consequently, this Court **FINDS** that there is a genuine issue of material fact as to whether IACP properly allocated no overhead expenses to nongermane activities in 1996. Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment on this issue are **DENIED.**

## 3. Board of Directors Meetings

■ Plaintiff requests that the IACP make a reasonable allocation for nongermane expenses associated with the meeting of the IACP's board of directors. Specifically, Plaintiff argues that because a significant portion of these meetings are spent discussing nongermane issues, a proportion of the meeting's costs should be categorized as nongermane. Plaintiff, however, cites no judicial authority for this request.

The First Amendment concerns with regard to meetings and conventions are serious. *Ellis* at 456, 104 S.Ct. 1883. However, the union must have a "certain flexibility" in

---

**3.** This Court understands that only Mr. E.E. Sowell, General Counsel for IACP, provided an accounting for his time.

its use of funds as they relate to the work of the union in the realm of collective bargaining. *Id.* Thus, the Supreme Court has held that the expenses associated with union conventions are germane. *Id.* at 448, 104 S.Ct. 1883. The *Ellis* Court required no breakdown of the time when germane or nongermane issues were discussed: The costs of the entire convention were germane.

By analogy, this Court believes the costs of the board of director's meetings are germane. These meetings are necessary for the functioning of the union. A breakdown of the meeting into time spent discussing germane or nongermane issues would be burdensome and would take away that "certain flexibility" to which the union is entitled.

This Court **FINDS** that the expenses surrounding the Board of Director's meetings are germane. Defendant's Motion for Summary Judgment on this issue is thus **GRANTED**. Plaintiff's Motion for Partial Summary Judgment is necessarily **DENIED**.

### D. Plaintiff's Claim that IACP's Objection Procedures and Notices are Constitutionally Inadequate

█ Plaintiff has alleged that the procedures established by IACP for objection to and resolution of disputes are inadequate. (Compl.¶ 21.) Plaintiff also challenged the form of IACP's statements and rebate procedures. (Compl.¶¶ 22–24.) As this Court stated earlier, the constitutional safeguards for an agency shop arrangements require an "adequate explanation of the basis for the agency fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *PAID,* 938 F.2d at 1132 (citing *Hudson,* 475 U.S. at 310, 106 S.Ct. 1066).

#### 1. Notice

█ The IACP must provide the non-member pilots with "sufficient information to gauge the propriety of the union's fee." *PAID* at 1132. Although the IACP need not provide an "exhaustive and detailed list of all its expenditures," it must include the "major categories of expenses, as well as verification by an independent auditor." *Hudson* at 307 n. 18, 106 S.Ct. 1066. "The *Hudson* case

makes very clear that there doesn't have to be explicit and excruciating details in the explanation." *Pilots Against Illegal Dues v. ALPA,* 1989 WL 251216 (D.Colo.1989), *rev'd on other grounds, PAID v. ALPA,* 938 F.2d 1123.

The IACP reports for both 1995 and 1996 provide the reader with the "major categories of expenses" required by the *Hudson* and *PAID* courts. Both reports give definitions for what is a germane and nongermane expense. The 1995 report lists over thirty-six different categories of expenses. Even though the 1996 report was less detailed and "somewhat sketchy" according to the court of appeals, it still outlined the "major categories of expenses and gave potential objectors sufficient information to gauge the propriety of the union's fee." *PAID* 938 F.2d at 1132.

Plaintiff, pointing out that the SGNEs contained no indication of IACP's total revenue from agency fees, argues that he was "unable to determine how much, if any, of his ... agency fee [was] being collected by the IACP but not spent on germane activities." (Pl.'s Resp. Def.'s Mot.Summ.J. at 18.) The Court does not understand the significance of this argument. The total amount of agency fees collected is irrelevant in determining how much of an objector's fee was spent on nongermane activities. The objector only pays the proportion of fees allocated to germane activities. The total amount of collected agency fees has nothing to do with this calculation. In addition, Plaintiff argues that IACP should have disclosed whether any agency fees are being "saved," as a result of revenue exceeding expenses. However, *Hudson* only requires that the union elucidate the major categories of expenses. Thus, the IACP's failure to include either of these figures on the 1995 and 1996 SGNEs does not cause Defendant to violate *Hudson's* notice provision.

The Court **FINDS** that the 1995 and 1996 SGNE reports satisfied *Hudson's* notice provision. Defendant's Motion for Summary Judgment on this issue is thus **GRANTED**. Plaintiff's Motion for Partial Summary Judgment is necessarily **DENIED**.

### 2. Objection Procedures

█ Plaintiff contends that the IACP has failed to provide nonmember pilots with a constitutionally sufficient procedure for objecting to agency fees. Objecting employees are "entitled to have [their] objections addressed in an expeditious, fair, and objective manner." *Hudson* at 307, 106 S.Ct. 1066.

█ Plaintiff first objects to the fact that IACP procedures only allow an advance reduction for the current year if a nonmember pilot objects by May 1. Indeed, IACP procedures provide that:

"a notice of objection may be submitted at any time during the calendar year for which the objection is to apply, but if it is received after May 1, the objector will not receive an advance reduction, but will only receive a rebate after the close of the year."

IACP Policies and Procedures § II(B).

The four month window of time by which the IACP limits objections that qualify for advance reductions does not, in and of itself, infringe on an objector's constitutional rights. The Seventh Circuit has held that an even narrower period of one month was permissible. *See Nielsen v. IAM*, 94 F.3d at 1107, 1110 (1996). Requiring nonmembers to voice their objections in a timely fashion in order to receive an advanced reduction is reasonable requirement. It is not as if objectors will receive no refund of their fees if they fail to object by May 1; they will merely receive a rebate instead of an advanced reduction.

However, IACP does not provide the nonmember pilots with any estimation or projected budget for germane or nongermane expenditures before the May 1 deadline. In addition, the SGNEs for the current year are not distributed until the summer of the following year. As Plaintiff argues, objectors are thus required to make "blind" objections in order to obtain an advanced reduction.

While this "blind objection" requirement may be problematic, it does not violate Plaintiff's constitutional rights. There is no requirement that the union requires Plaintiff to object to *specific* nongermane items in order

to receive an advance reduction. Plaintiff merely needs to make a general objection to the use of his fee for nongermane expenses. Plaintiff's monthly dues would then be reduced by the percentage of the prior year's nongermane expenditures. Policies and Procedures § IV(A)(3). IACP does not provide Plaintiff with an estimated budget and can expect nothing more than a general objection to the use of his agency fee for nongermane expenses.[4]

Because there is no evidence that IACP requires anything more than a general objection to receive an advance reduction, this Court **FINDS** that Defendant's objection procedures relating to advanced reductions are constitutionally sufficient.

### 3. Timing

█ Plaintiff also objects to the lag time involved in receiving his agency fee rebate. Objectors' rebates are not processed by IACP until after the year's audited figures are available, usually six to twelve months after year's end. A nonmember pilot who objects after May 1 of a given year must wait until approximately June 15 of the following year, when the SGNE for the year is issued, to receive a rebate for nongermane expenses. Plaintiff thus contends that objections are not addressed in the "expeditious" manner anticipated by *Hudson's* third element.

Although a thirteen month wait is hardly expeditious, the year's nongermane expenses cannot be calculated until an accounting and audit is completed at year's end. Indeed, *Hudson* itself requires the union to verify its calculations with an independent auditor. 475 U.S. at 307 n. 18, 106 S.Ct. 1066. This audit cannot be completed overnight. In the instant case, fulfilling one requirement, an independent audit, puts strain on another, a "reasonably prompt" or "expeditious" decision.

Plaintiff wants us to interpret *Hudson* to require IACP to provide Plaintiff with a "reasonably prompt" resolution to his objection to charges that have yet to occur and of which neither an accounting nor an audit has

---

4. Because Plaintiff did not object to any nongermane expenses until May 20, 1996, Plaintiff received a rebate instead of an advanced reduction.

been made. If we were to adopt Plaintiff's argument, however, a union would have to order a special accounting and audit every time an objector voiced a complaint about nongermane expenses yet to be incurred. This cannot be what *Hudson* envisioned.

Although *Hudson* was primarily concerned about protecting the constitutional rights of objecting nonunion members, it did not ignore the practical side of establishing a constitutionally adequate procedure to do so. *Hudson* recognized that there were "practical reasons why '[a]bsolute precision' in the calculation of the charge to nonmembers cannot be expected or required. 475 U.S. at 307 n. 18, 106 S.Ct. 1066. Thus, for instance, the Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year." *Hudson* at 307 n. 18, 106 S.Ct. 1066 (citations omitted). Similarly, common sense dictates that IACP cannot be faulted for failing to respond to Plaintiff's objections to charges that have yet to be incurred. Accountings and audits are completed at the end of the fiscal year. The most logical reading of *Hudson*, therefore, would be to expect a union to respond to objections and provide rebates for a given year's nongermane expenses when those expenses are readily calculable.

The D.C. Circuit recognized the realities of union accounting procedures when it upheld a union policy that provided for a review of a 1992 SGNE in mid–1993. *See Miller v. Air Line Pilots Assoc.*, 108 F.3d 1415, 1423 (1997). "[P]ilots can, if they wish, request arbitration in any given year of the prior year's statement, because that same statement will determine both their final agency fee for the preceding year and their tentative fee for the current year." *Id.* The same holds true in the instant action. Plaintiff can challenge in any given year the prior year's

SGNE and receive a decision regarding his objection within a year.

There is no doubt a delay between the time a pilot files an objection and the time the auditor's report becomes available. Perhaps the only way to solve this problem completely is for the union to conduct more frequent accountings and audits. This Court, however, has found no case law imposing such a burden on a union. Although this Court would like to see a more prompt resolution of Plaintiff's objection, the realities of accounting and audits make some delay inevitable.[5]

It is important to remember that the Union provides the nonunion pilots the opportunity of an advance reduction, based upon the prior year's SGNE, if they voice an objection by May 1 of the current year. In addition, IACP's escrow procedure guarantees that none of Plaintiff's funds are used, even temporarily, for nongermane activities while an objection is pending. *PAID*, 938 F.2d at 1133. Procedures such as IACP's are looked upon favorably by the *Hudson* and *PAID* courts.

This Court **FINDS** that Defendant's procedures which delay resolution of an objection made after May 1 of a given year until the year's SGNE is complete does not violate *Hudson's* requirement of a prompt resolution to agency fee disputes.

Defendant's Motion for Summary Judgment on the issue of the constitutionality of the objection and rebate procedures is thus **GRANTED** because the IACP's Policies and Procedures are sufficient under *Hudson*. Consequently, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

---

5. Plaintiff cites to two Sixth Circuit cases in his brief which hold that delays of twelve and fourteen months, respectively, did not meet *Hudson's* requirements. *See Tierney v. City of Toledo*, 824 F.2d 1497 (1987); *Damiano v. Matish*, 830 F.2d 1363 (1987). The union's objection and rebate policies in those cases had many flaws, only one of which was the long delay period. For example, neither of the unions had procedures for advance reductions. We think this fact is important if one is to compare these cases to the instant action.

In *Damiano* and *Tierney*, objectors had *no choice* but to wait at least a year before any portion of their agency fees were returned to them. Under the IACP's policies, Plaintiff can file an objection early in the year and forego paying an estimated amount of agency fees through the advance reduction procedures. Plaintiff isn't forced to wait a year or more before his agency fees are discounted to reflect the union's nongermane expenditures.

### E. Plaintiff's Claim that § 17 of the Collective Bargaining Agreement is Facially Invalid.

 Section 17 of the collective bargaining agreement allows IACP to collect an agency fee from non-IACP pilots "in an amount equal to IACP's regular and usual monthly dues and assessments (not including fines and penalties)." Plaintiff contends that because this provision allows IACP to collect agency fees even for undisputedly nongermane activities, it is constitutionally invalid.

The Supreme Court, however, has tacitly approved agency shop agreements where nonunion employees pay agency fees equivalent to union dues. In *Ellis v. Railway Clerks*, the agency shop agreement provided that "employees need not become formal members of the union, but must pay agency fees equal to members' dues.... [The dissenting employees] do not contest the legality of the union shop *as such*, nor could they." 466 U.S. at 439, 104 S.Ct. 1883 (emphasis added). The Court, therefore, acknowledged that an agency shop agreement may legally require collection of agency fees equivalent to union dues, if there are "advance reduction of dues and/or interest-bearing escrow accounts" that would prevent an "involuntary loan" from the objecting employee. *Id.* at 444, 104 S.Ct. 1883. Plaintiff's argument that such agreements are facially invalid, therefore, is without merit.

Plaintiff, however, cites two Sixth Circuit cases where the court found that collection of agency fees in an amount equal to union dues was inconsistent with the requirements of *Hudson.* In those cases, if an affected employee objected to the amount charged, the agency fee was not reduced but was placed in escrow pending resolution of the objection. *See Damiano v. Matish,* 830 F.2d 1363 (6th Cir.1987); *Tierney v. City of Toledo,* 824 F.2d 1497 (6th Cir.1987).

These Sixth Circuit cases differ, however, from the case at hand. In *Damiano* and *Tierney,* the union afforded no procedure for an advance reduction of dues. The IACP Policies and Procedures, however, provide for an advance reduction if the objector follows appropriate procedures:

Beginning in July of each year, any objector who is paying monthly installments based on a monthly Statement of Account will receive a billing credit against his/her current year's estimated agency fee. This billing credit will be equal to the percentage of nongermane expenditures of the previous year as shown on the latest Statement of Germane and Nongermane Expenditures. The billing of subsequent monthly installments will be reduced in consideration of the applied billing credit.

Policies and Procedures § IV(A)(3).

IACP does not force an objector to pay the equivalent of union dues if he follows the appropriate procedures. In addition, IACP automatically escrows agency fees in an amount equal to the estimates of nongermane expenses from the year previous. At no time, then, does IACP violate *Hudson's* provision that nonmember funds will be used, even temporarily, to finance activities unrelated to collective bargaining. *See Hudson* at 305–307, 106 S.Ct. 1066.

In addition, many circuits have held, contrary to the Sixth Circuit, that escrow accounts "obviate the need for advance reductions." *Grunwald v. San Bernardino City Unified Sch. Dist.,* 994 F.2d 1370, 1374 (9th Cir.1993); *See also Gibson v. Florida Bar,* 906 F.2d 624, 631 (11th Cir.1990), *cert. dismissed,* 502 U.S. 104, 112 S.Ct. 633, 116 L.Ed.2d 432 (1991); *Crawford v. Air Line Pilots Ass'n Int'l,* 870 F.2d 155, 161 (4th Cir.1989); *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989); *Andrews v. Education Ass'n of Cheshire,* 829 F.2d 335, 339 (2d Cir.1987). This Court finds the reasoning of these circuits persuasive.

In light of the fact that IACP allows for both an advance reduction of agency fees and an escrow procedure for agency fees in an amount of estimated nongermane expenses based on the prior year's expenses, this Court **FINDS** that Section 17 of the collective bargaining agreement is constitutionally adequate. Defendant's Motion for Summary Judgment on the issue of the constitutionality of Section 17 is thus **GRANTED**.

### IV. Conclusion

Based on the foregoing reasons, the Court **FINDS** that Plaintiff was not required to

exhaust his arbitrable remedies before bringing this suit. Defendant's Motion for Summary Judgment on this issue is thus **DENIED.** The Court **FINDS** that Plaintiff's claims regarding the 1995 SGNE are barred by the statute of limitations. Defendant's Motion for Summary Judgment on that issue is thus **GRANTED.**

On Plaintiff's claim that Defendant assessed agency fees for nongermane expenses, Defendant's Motion for Summary Judgment is **GRANTED** as to the issues of the ALPA merger and the Board of Director meetings, and **DENIED** as to the issue of overhead and administrative expenses. Plaintiff's Motion for Summary Judgment is **DENIED** on all these issues.

On Plaintiff's claim that Defendant's objection procedures and notices are constitutionally inadequate, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment on this issue is necessarily **DENIED.**

On Plaintiff's claim that Section 17 of the collective bargaining agreement is facially invalid, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment is necessarily **DENIED.**